

1
2
3
4

Peter T. Harrell, In Pro Per
PO Box 131
Ashland, OR 97520
peterharrell@yahoo.com
(no phone number)

**FILED**

JUL 20 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

5

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11
12
13
14
15

Peter T. Harrell, Individually, and also as *ex rel* on Behalf of the State of California,

        Plaintiffs,

vs.

Robert Puckett, Sr.; Michele Hanson; Melissa Tulledo; Clint Dingman; Thomas Warnock; Hornbrook Community Services District; Bruce's Towing/Radiator & Dismantling; John Does 1-20

        Defendants,

Case No: 2:23-CV-1448 TLN AC (PS)

**COMPLAINT**
**(JURY TRIAL REQUESTED)**
ACTION AT LAW FOR CIVIL RIGHTS VIOLATIONS; PENDENT STATE CLAIMS; **CALIFORNIA FALSE CLAIMS ACT ACTION - FILE UNDER SEAL PENDING REVIEW BY ATTORNEY GENERAL OF CALIFORNIA**

REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS, AND FOR DECLARATORY RELIEF

USC 42 §§1983, 1985, 1986, 1988, and 12131-12134

16
17

**JURISDICTION**

18
19
20
21
22
23

1.  Jurisdiction over this action arises pursuant to Sections 1331, and 1343 of Title 28 of the United States Code, as arising under the Constitution and laws of the United States, specifically Article VI, and Amendments 1, 4, 5, 6 and 14 of the United States Constitution; and, sections 1983, 1985[1], 1986, and 1988 of Title 42 of the United States Code, as an action seeking redress of grievances for violations of rights and privileges secured to Plaintiff Peter T. Harrell ("Plaintiff") by the Constitution and Laws of the United States. Supplemental jurisdiction (Section 1367) is asserted over Plaintiff's pendent state law claims for relief - including, but not

24
25

---

[1] Concerning Plaintiff's federal claims, and equal protections claims generally, Plaintiff asserts that he was singled out for disparate and discriminatory treatment by the defendants, who had no rational basis to do so other than their malicious intent to retaliate against Plaintiff as a "class of one" for bringing legal actions against the HCSD, and assisting others to do so. See, generally, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs*, 101 F.3d 1179, 1181 (7th Cir. 1996) ("The equal protection clause does not speak of classes. A class, moreover, can consist of a single member.").

limited to, common torts, violations of State laws, the California False Claims Act, violations of the Hornbrook Community Services District Bylaws ("Bylaws"), and/or the Hornbrook Community Services' District's ("HCSD" or "District") operational policies, practices, and procedures specified on the District's website as "Rules and Regulations" ("Rules" hereinafter) at: https://hornbrookcsd.specialdistrict.org/operation-policies[2]. This action is also brought in the name of all persons similarly situated to Plaintiff, as a Private Attorney General, and as provided by the HCSD Bylaws at Section A-9(26). Times material to this complaint, so far as is known to Plaintiff after reasonable investigation, are July 19, 2021, through and including the date of filing of this action, and ongoingly as specified. All claims in this complaint are based upon conduct which occurred, or was discovered[3], during this time period, within Siskiyou County, California.

## PARTIES

2. Defendants Robert Puckett, Sr. ("Puckett"), Clint Dingman ("Dingman"), Michele Hanson ("Hanson"), and Melissa Tulledo ("Tulledo") are citizens of Siskiyou County, California, and are the Directors and employees of Defendant HCSD, a public entity providing domestic water to the community of Hornbrook, and operating wholly within the County of Siskiyou, a political subdivision of the State of California, created, and at all times material operating, as an independent special district[4] under the laws of California and of the United States, as well as its own duly adopted Bylaws and Policies, and subject to their jurisdiction. All claims made herein are brought against the natural person defendants in their individual, as well as their official capacities to the extent permitted by law, and the circumstances of each of the claims made against them.

3. Defendant Thomas Warnock ("Warnock") is a contractor/employee/agent of Defendants Puckett and the HCSD and a citizen of California who planned with, and assisted Puckett, the HCSD, and their agents in planning for, and submitting false claims, applications,

---

[2] The HCSD Bylaws, adopted on April 18, 2014, and the "Rules and Regulations" of the HCSD listed on its website as a PDF link at https://hornbrookcsd.specialdistrict.org/operation-policies are hereby incorporated herein to the extent necessary to make out any applicable claims and/or allegations.
[3] Under law, a cause of action for a claimed harm accrues on the date of its discovery by the Plaintiff. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.) "Claimed harm" refers to all of the elements of the cause of action, which must have occurred before the cause of action can be said to accrue, and the limitation period begins. (*Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1029.) Federal law applies a similar rule. See *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998).
[4] Special Districts are primarily controlled by the provisions of California Government Code sections 61000, *et seq.*, and in this case, also the California Water Code. Dingman is currently a State Certified Water Treatment and Distribution Operator of grades T1 and D1.

contracts, supporting documentation, and other documents to the State of California concerning drought infrastructure and water system repair projects, and to do so without bids as required by law by creating a false "water emergency"[5].

4. Defendant Bruce's Towing/Radiator & Dismantling ("Bruce's Towing") is a business operated and licensed within the City of Yreka, itself within the County of Siskiyou, California, which business acted knowingly, willfully, and recklessly by accepting the unlawful and unconstitutional directions and instruction of Defendants Puckett, HCSD, Dingman, and the Siskiyou County Sheriff's Deputies who were themselves agents of Puckett, Dingman, and the HCSD, and agreeing to participate in, and aid those persons' wrongful conduct in trespassing onto private property located at 408 Henley-Hornbrook Rd., Hornbrook, California[6] on or about July 19, 20, 21, 22, and/or July 23, 2021, then and there acting to unreasonably search, seize, and convert Plaintiff's private property, a Honda CR-V[7], and/or Plaintiff's property interests, absent any form of warrant, due process, or judicial order, and to otherwise violate Plaintiff's rights as described below. Such action rendered Bruce's Towing a "joint actor" with the government agency defendants for purposes of the herein 42 USC §1983, and related claims.

5. The HCSD was at times material to this complaint governed by a Board of Directors consisting in relevant part of "President" Robert Puckett, Sr.; "Secretary" Michele Hanson, and Director Melissa Tulledo, who at all times material acted with the agreement, assistance, and aid

---

[5] The claims by Plaintiff in this action arose when Puckett and Dingman, acting pursuant to various purported HCSD resolutions, motions, Rules, etc allegedly applied/enforced as part of the false, unlawfully-invoked, executed, and perpetuated "water emergency", trespassed upon a private driveway to warrantlessly, and unreasonably, search, seize, damage, and convert Plaintiff's vehicle, a Honda CR-V (twice) on the basis of Puckett's no-notice-or-hearing "violations" of: the "water emergency"; the "Rules"; the "emergency declaration"; and/or, "Resolution alleged against Plaintiff. In doing so, Puckett, Dingman, and their agents also arbitrarily and capriciously failed to follow the HCSD Rules at Sections 2.10, 4.03, 4.05, 4.15, and 4.29. At the time they searched, seized, and converted Plaintiff's vehicle, neither Puckett, nor Dingman, possessed the formal approval of the Board, and the identification, required by law for them to even arguably do so under the rules (see Section 4.05).

[6] The HCSD has no right of entry onto that private land except by the owner's express permission, and it holds no easements thereon. Plaintiff is not a resident at that property, and does not contract with the HCSD for water service to that residence. Contrary to the assertions of Puckett and the HCSD, State laws cannot authorize the unconstitutional search and/or seizure of Plaintiff's vehicle - even in the face of Puckett's false report of a crime relating to Plaintiff's parking of his car in the driveway. See, generally, Vehicle Code §22650; *Morris v. County of Marin*, 18 Cal.3d 901 (Cal. 1977); *Garcia v. City of L. A.*, 611 F. Supp. 3d 918 (C.D. Cal. 2020); *Sandoval v. County of Sonoma*, 72 F.Supp.3d 997, 1007 (N.D. Cal. 2014), aff'd, 912 F.3d 509 (9th Cir. 2018), and aff'd, 912 F.3d 509 (9th Cir. 2018); "The mere fact that a state has authorized a search or seizure does not render it reasonable under the Fourth Amendment."

[7] Further, when Bruce's Towing took Plaintiff's vehicle, it caused extensive damage to the undercarriage due to the lack of training, the ineptitude, and the negligence of the tow truck operator.

of employee Clint Dingman[8].  By naming Puckett, Hanson, Tulledo and the HCSD as co-Defendants, Plaintiff has intended to comply with the provisions of California Government Code 815.3 throughout each applicable cause of action herein, whether specifically set forth, or implied in the recitation of factual allegations.

6.  Plaintiff Peter T. Harrell ("Harrell") is a taxpayer to, and owns property within the boundaries of, the HCSD.  Plaintiff engages in farming, ranching, and other gainful economic activity within the boundaries of the HCSD - all of which activities rely on the lawful, proper operation of the HCSD's water production, treatment, and distribution systems, facilities, and personnel.  Further, Plaintiff has been subjected to attempted HCSD Rules enforcement and other harassment by Defendants Puckett, Hanson, Tulledo, Dingman, and the HCSD.  Plaintiff is also a State Certified Water Treatment, and Distribution Operator of grades T2 and D2.

7.  Plaintiff alleges on information and belief that the HCSD, Puckett, Hanson, Tulledo, and Dingman agreed, cooperated, and acted together, to take the wrongful, illegal, and/or civil rights-violating actions against Plaintiff also as part of a scheme to retaliate against Plaintiff for filing governmental complaints and legal actions (and assisting others to do so) involving the HCSD, Puckett, Hanson, Tulledo, and Dingman, and to prevent him from continuing to do so, because those actions represented a threat to the ~$6.5 million in various grants/funding to the HCSD that Defendants Puckett, Hanson, Tulledo, and Dingman hoped to wrongly profit from, as well as an additional "emergency grant" of some $1,600,000 for a new well and supporting infrastructure via unlawful, "no-bid" contracting[9].  Those Defendants applied for (with the aid and assistance of Warnock), and/or obtained, all of the ~ $8.1 million grant moneys by the use of falsification of facts on government applications and supporting documents, by falsely creating[10] and certifying "emergencies" and other conditions in order to bypass bidding and other

---

[8] In his individual, and official capacities as the HCSD's Systems Operator, shift operator, general manager, watermaster, and/or water plant operator.

[9] These "no-bid" schemes violated California's laws concerning public works, as well as the HCSD's own Bylaws concerning bidding for jobs, and the process of awarding contracts by (unlawfully, and fraudulently) appointing HCSD President Puckett to directly control assignment of jobs and spending of public funds, rather than the General Manager.

[10] By deliberately over-pumping the wells (instead of rotating their use daily as instructed by the Public Engineer who oversaw their installation) so that production would drop and then claiming that the "wells were going dry"; or, by simply not turning the well pumps on for certain wells for weeks at a time.  On information and belief after reasonable investigation over th past two years, Plaintiff alleges that Puckett and the other Defendants also caused a massive leak in the HCSD water system (that they pretended they could not find), and that they did not report on their grant applications in order to get the "emergency drought infrastructure funding".

notice/scrutiny requirements, and to unlawfully continue those emergencies beyond any actual lack of water production or other lawful reason, in order to violate the laws concerning public works, the Bylaws, and, the constitutional rights of the public and of Plaintiff.

8. As part of the scheme to falsely apply for, and wrongly profit from, the grants, the HCSD and Puckett, Hanson, Tulledo, with the agreement and assistance of Warnock and Dingman (and unknown John Does), created and perpetuated a false "water emergency" that deprived Plaintiff and the other property owners of the HCSD full and complete water service without any notice, hearing, or opportunity to contest the actions of Puckett, Hanson, Tulledo. The deprivations were unlawfully imposed by the HCSD in a manner contrary to law, and later maintained unlawfully after full water system functionality was restored by the independent efforts of the HCSD's customers who found the leak in the main water pipe, fixed it themselves, and restored water to most of the HCSD distribution system[11].

9. The false water emergency plan, the severely leaking pipe, the mistreatment of the wells, and the shutoff of the wells occurred because Puckett, Hanson, and Tulledo were told they would not get the funding (particularly the "emergency" funding) otherwise - rather than on the basis of any true ongoing emergency. Puckett, Hanson, Tulledo and Dingman also created and perpetuated the false "water emergency", water shortage, and service deprivations to Plaintiff, other property owners, and customers of the District by turning off the wells that supply water to the District's customers, and by adopting and imposing upon Plaintiff and the public, HCSD "Resolution 2021-02" (and its later incarnations/alterations) in manners contrary to Water Code §§350, 351. 355, 358, and other law.

10. This action is also brought in the name of all persons similarly situated to Plaintiff, as a Private Attorney General where permitted by law, and as provided by the HCSD Bylaws at Sections A-9(1); A-9(13); A-9(26); and, 1-5.030. Concerning Plaintiff's pendent state claims herein, Plaintiff timely and properly provided written notice(s) of his state-law claims to the

---

[11] Once the residents of the community of Hornbrook made the repairs (without the permission of the HCSD and Puckett), the State Water Resources Control Board (SWRCB), on the basis of full repressurization of the entire HCSD system, and the ongoing filling of the water tanks, declared that "the emergency is over", but that didn't stop Puckett and the other defendants from falsely continuing the "emergency" in order to control everyone's use of water, and so as to impose draconian penalties upon Plaintiff and his associates as large water users. On information and belief, Plaintiff alleges that an additional reason for Puckett's frothing desire to cut off water to Plaintiff's farm is that Puckett hoped to destroy all of the lush trees, crops, and plants on Plaintiff's, and his associates, properties - due to Puckett's jealousy over his own yard, which appears to be a cross between a junkyard, a garbage dump, and a trailer park (all of which violates the Siskiyou County Code, and constitutes a nuisance).

public employee, entity, and agency Defendants (HCSD, Dingman, Puckett, Hanson, Tulledo) in full compliance with all requirements of the **California Government Tort Claims Act**, Government Code sections 905[12], 910, and 915. The HCSD, Puckett, Hanson, Tulledo, and their employees, agents, and/or contractors failed to respond to Plaintiff's claims. In doing the acts alleged herein, Puckett, Hanson, Tulledo, Dingman, Bruce's Towing, and John Does 1 through 20, were acting in their official capacities as elected officials and/or public employees or as a direct agent of an elected or public official or public officer, and/or were "jointly engaged" with a public officer or official while engaging in the alleged wrongful conduct, and/or were acting under color of law, and of such authority as public agency employees, officers, or agents thereof.

### Duties of, and Applicable to, the HCSD and Public Official/Officer Defendants

11. As a general rule, each person has a duty to exercise reasonable care to avoid causing injury to others. (Civ. Code, § 1714, subd. (a); *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771.) Public agencies and officers, however, *additionally* have a ministerial duty to obey all State and Federal Constitutional and statutory laws[13] (including, but not limited to, provisions of the SDWA and CWA applicable to the HCSD's operations), along with all formally adopted regulations and administrative rules[14]; and, must obey all local rules, regulations, ordinances, and other policies, directives, and practices adopted by motion or resolution of the Board of Directors - those including the HCSD's own Bylaws, as well as its Rules and Regulations[15].

12. The Board members, Officers, and employees of the HCSD also owed a fiduciary duty[16] to the District, and to each property owner and water customer in the District[17] to: obey the restrictions of the US and California Constitutions; to obey all Federal, State laws relating to

---

[12] The HCSD took no action on the claims (incorporated herein), failing to respond to the claims notice (see CA Govt. Code 910.8; 911; *Martinez v. County of Los Angeles*, 78 Cal.App.3d 242, 245 (1978)).
[13] This includes procedural duties such as the Brown Act (Govt. Code sections 54950, *et seq.*) which is applicable and mandatory upon the HCSD and its Board per Government Code §61044.
[14] See, i.e., 22 CCR §§63750.25, 63765(a). The HCSD was also specifically required by Government Code section 61043 to hire and maintain a General Manager, whose duties are set forth in Government Code sections 61050 and 61051, and include direct supervision and direction of the "day-to-day" operations of the District, and its employees. Such duties obviously cannot be performed remotely.
[15] "'Where a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion.' " (*Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1267, italics omitted); see also *Pozar v. Department of Transportation* (1983) 145 Cal. App. 3d 269, 271 (public entity has a ministerial duty to comply with its own rules and regulations where they are valid and unambiguous).
[16] Fiduciary duty of Directors of a special district providing water is also enshrined at Water Code sections 31007, 71614, and 71616; as well as CA Const. Art. XVI, Section 6. The Bylaws provide that qualified persons may bring an actions on behalf of that duty at Section A-9(1), A-9(13), and/or A-9(26).
[17] See HCSD Bylaws at A-9(26).

public works; and those restrictions on bidding on public works as provided by the Bylaws and/or Rules; to comply with all primary drinking water standards and the Safe Drinking Water Act; to employ and maintain competent, State certified and licensed employees, contractors and other persons; and, to maintain the entire water production, treatment, and distribution system in good repair, all in a manner that would provide for sufficient safe water to the public, community, and thus to Plaintiff.

13. As a result, the HCSD, Puckett, Hanson, Tulledo, Dingman and their employees, agents, and/or contractors also had a duty of care to Plaintiff and the public to operate the water production, treatment, and distribution facilities with care, and in conformance with <u>all</u> laws. They also were under a ministerial duty to obey, and under a duty of care to obey, those provisions of law relating to public works, bidding of jobs for those works, and the administration of the bidding process and awards of contracts relating to HCSD public works, so that reasonably foreseeable harms would not occur, yet they repeatedly breached that duty by engaging in falsification of applications and documents submitted to the State; by creating "water emergencies" that were based upon falsified certifications, declarations, reports, and HCSD Board motions and/or "resolutions", purportedly official communications by Puckett as President; and, using those false water emergencies as an excuse to implement and apply to Plaintiff and to the public, unlawful, unconstitutional, and Rules-violating enforcement schemes instituted by Puckett (with the approval, ratification, and assistance of Hanson, Tulledo, Dingman, and John Does) concerning alleged "violations" issued by him (and punishments imposed by him and Dingman), thus repeatedly and grossly violating Plaintiff's civil rights.

14. Even more specifically, where a public entity such as the HCSD is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless it establishes that it exercised reasonable diligence to discharge the duty. (<u>Gov. Code</u>, §815.6.) Each of all these duties apply to claims and allegations herein, and particularly to the claims arising from harms to Plaintiff and his property resulting from the HCSD and its Officers engaging in the violations of law, Rules, and the Bylaws as set forth in this Complaint - all of which violated Plaintiff's rights, and damaged him economically. Plaintiff therefore seeks a declaration that certain motions, resolutions, Rules, customs, policies, and/or procedures of the HCSD, Puckett, Hanson, Tulledo, and as implemented by their

1   employees, agents, and/or contractors are unlawful, contrary to the United States and/or

2   California Constitutions[18], and/or the HCSD Rules and Bylaws - as well as an injunction

3   prohibiting those certain motions, resolutions, Rules, customs, policies, and/or procedures.

## OVERVIEW AND BASIS FOR CLAIMS/ACTION

4       15.  On or about July 19, 20, 22, and/or 23, 2021, during a period when there was no

5   usable water in the distribution system to the west side of the Hornbrook community, and no

6   water flowing from the taps of home at which Plaintiff's vehicle was lawfully parked[19]; the

7   HCSD, Puckett, Dingman, Bruce's Towing, and the John Doe public officer/agent Defendants,

8   while acting under color of law, and of their offices as public officer/employees, agreed and

    acted as participants of an ongoing wrongful agreement and plan engendered by the HCSD,

9   Puckett, and Dingman to wrongfully, without any lawful authority, due cause, proper notice,

10  warrant, or due process, trespass onto private property, and Plaintiff's chattel in order to seize

11  (and ultimately convert) Plaintiff's property[20], a Honda CR-V and its contents.  At the time they

12  did so, Puckett stated that he had the authority to undertake warrantless trespass, searches, and

    seizures under the authority of the HCSD Rules, the "declaration of water emergency", and/or

13  Resolution #2021-02[21] (and its progeny).

14

---

15  [18] That is, one of Plaintiff's claims is that the Supremacy Clause applies the US Constitution to prohibit all

16  of the practices and procedures of the HCSD, Puckett, Dingman, and their agents relating to the issuing of
    "violations" and associated punishments; and, all warrantless trespassing, searches, seizures, and

17  conversion of private property to governmental use they inflicted upon Plaintiff.
    [19] The address of this home is 408 Henley-Hornbrook Rd., Hornbrook, CA 96044 (hereinafter, the

18  "Residence").  There were no signs indicating any restrictions on parking at that location, or indicating
    that the HCSD had any interest in the location at all.  The vehicle was not parked there at the time

19  normally reserved for reading the water meter (see HCSD Rules, Section 12.07), and notice to move it
    was not given per the HCSD Rules (Sections 2.10, 4.03, 4.05, 4.29).

20  [20] This property a 2001 Honda CR-V and its contents (actually seized [and damaged] twice).  Searches
    and seizures of property without a warrant or determination by a Court are per se unreasonable under the

21  Fourth Amendment, and it is the burden of the government agency undertaking the seizure to prove its
    legitimacy in every respect. See, i.e., United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001)

22  [21] Resolution 2021-02 was purportedly adopted as a declaration of a "water shortage emergency" at a
    special meeting (Gov. Code §54956.5) of the HCSD's Board of Directors pursuant to Water Code §§350,

23  and 351 (see also Sections 355 and 358).  The Resolution stated that no public hearing would be held,
    or was required.  (ECF #69-1, p.2:6-9, and Exhibit 1.)  However, Water Code §351, in recognition of the

24  property interest "consumers of the water supply" have in that service, prohibits adoption of a declaration
    of water shortage emergency without a public hearing except in circumstances of: "a wildfire,

25  deenergization event, or a breakage or failure of a dam, pump, pipeline, or conduit causing an immediate
    emergency."  There was no evidence before the Board of any of those events having happened at the time
    the Resolution was adopted.  At the July 16, 2021 meeting, the Board received no evidence, and made no
    findings of fact that any of the §351 listed events were the cause of the alleged "water emergency", while
    the Resolution itself makes no mention of the existence of any of the §351-specified events which would
    excuse the HCSD from having a public hearing prior to declaring the "water emergency".  Further,

16. While doing so on or about July 19, 20, 21, 22, and/or 23, 2021, the HCSD, Puckett, Hanson, Tulledo, and Dingman [22], without lawful authority, due cause, notice, or due process of law[23], acted in violation of the Constitutions and laws of the United States and California, and the HCSD's own Resolutions, Rules and Regulations, and Bylaws. The HCSD and Puckett, Hanson, Tulledo also threatened Plaintiff with, and brought against him, baseless administrative prosecutions based upon their claims of Plaintiff's violation of HCSD Rules and Regulations, but then refused to afford Plaintiff any proper notice thereof[24], hearing, trial, opportunity to confront witnesses and evidence against him, or access to counsel before they *de facto* convicted him *in absentia*, and then imposed punishments upon him by taking his vehicle.

17. Further, the HCSD and Puckett thereafter stated that Plaintiff (notwithstanding his contractual obligation to the property owner to do so) could not use certain portions of the Residence's driveway upon pain of further unlawful (and without notice) seizures of vehicles - thus committing a government taking of Plaintiff's land. All these actions inflict serious,

---

Plaintiff has found evidence that the HCSD, Puckett, Puckett's agent, Dana Barton, and Defendant Warnock, all planned and worked together to obtain information about declaring a "Water Code §350 emergency" many weeks prior to doing so on July 16, 2021 so that they could effectively bypass the laws and restrictions relating thereto, with the further unlawful goal of submitting fraudulent grant applications and supporting documents to the SWRCB to "prove" that the HCSD was unable to produce sufficient water for the community. This was especially critical for them because of the recent inspection by an Engineer for the SWRCB (Craig Bunas) who verified in his report of that inspection that water production by the existing HCSD wells and infrastructure was sufficient for the needs of the District - even in the highest demand month of July. The "water emergency" was also part of a "plan" by these Defendants and other John Does to "stop the lawsuits" by Plaintiff and two of his associates, Kimberly Olson and Roger Gifford, by falsely alleging criminal acts against each of them (this unlawful goal was advanced against Plaintiff by Puckett via allegations that any "violation" of the Rules [as determined unilaterally by Puckett] constituted a misdemeanor for which Puckett, Hanson, Tulledo, and the CSD would seek to have Plaintiff charged by the Siskiyou County Sheriff and District Attorney.

[22] Plaintiff is informed and believes that some supposedly official acts, including assertion of executive, and/or *ex parte* and/or *ultra vires* power to Puckett and/or Dingman alleged herein, were actually unilaterally taken by Dingman and/or Puckett with the agreement, encouragement, and ratification of Hanson and Tulledo **outside** of any official, properly noticed, and/or or agendized Board meetings, and without compliance with Gov. Code §61045 - for the purpose of concealing such unilateral acts from the public, and Plaintiff, and to prevent opposition to those wrongful acts via direct petitioning activities, and the provisions of the HCSD Bylaws and Policies. All such acts also violate the provisions of Govt. Code section 61045, among other laws, and so are void in the legal sense of the term.

[23] Plaintiff was not given **any** advance notice of, nor information on how to challenge the violations alleged, or the actions taken against him, nor how to contest the "violations" issued by Puckett. It is plain that the Defendants' goal is to permanently deprive Plaintiff of his Constitutional rights to due process, and the equal protection of the laws.

[24] Defendant Puckett claimed that he gave notice to Plaintiff of allegations against him via email, and by "taping them to the fence" surrounding the Residence. Neither of these methods is accepted as proper service in the 9th Circuit, or the State of California - or even under the HCSD's own Rules and Regulations (at Sections 2.10, and 4.03), and Puckett knew this at the time.

ongoing harm to Plaintiff, and left her without means to redress those wrongful acts other than by injunction, and/or TRO. **Plaintiff therefore seeks declaratory relief, and an injunction of this Court to fully restore his Constitutional Due Process, 4th Amendment, and property rights.** These acts by the HCSD and Puckett, undertaken without any lawful authority, using assumed police powers and imposing punishments for alleged administrative and criminal violations, also constituted malicious prosecution(s) of Plaintiff, and deprived him of liberty and property interests without due process of law, the opportunity to confront and cross examine witnesses and evidence against him, and without opportunity to consult with, or be represented by, counsel at any HCSD proceedings.

18. On information and belief, Plaintiff alleges that the HCSD, Puckett, Hanson, Tulledo, and Dingman engaged in the foregoing described acts as part of an agreement and coordinated plan amongst them to oppress Plaintiff, as well as to act maliciously, with reckless disregard for Plaintiff's rights and any harms that may befall her as a result of their actions.

19. The HCSD, Puckett, Hanson, Tulledo, and Dingman engaged in enforcing and/or implementing written and unwritten policies, customs, or practices of the HCSD under color of law and of their official positions with the HCSD, and that advanced these wrongful goals and actions that were in violation of the Constitution and laws of the United States, the State of California, the HCSD Rules and Regulations, and/or its Bylaws. Further, in doing so, they acted to treat Plaintiff differently, and more harshly, than other property owners and denizens of the HCSD, and for an improper purpose that served no legitimate public goals.

20. Further, in regards to the HCSD, Puckett, Hanson, Tulledo, and Dingman, the wrongful acts were additionally calculated to retaliate against Plaintiff for his political and legal activity in opposition to them[25], all with deliberate indifference to Plaintiff's statutory and Constitutional rights. These Defendants also thus jointly acted to systematically and wrongfully

---

[25] Over the past several years, Plaintiff has brought multiple legal actions against the HCSD and its officers, filed complaints concerning its operations with multiple government agencies, and has assisted others in doing those things as well, much to their angst and irritation. In fact, Puckett seized the opportunity while he was on local television to complain about some of that litigation. See news story on the Channel 10 Medford, OR station at: https://ktvl.com/news/local/amid-water-crisis-small-community-takes-matters-into-its-own-hands  The leak featured on the news story was caused by a 3/8-1/2" hole in the water main, which at 60-70 PSI of water pressure lost at least 25,000 gallons per day for many weeks or months, during which time the HCSD and Puckett, Hanson, Tulledo did nothing to find or fix the leak, but instead using its effect on the system to advance their fraudulent goals of obtaining "emergency" and "urgency" grants. After some investigation, Plaintiff alleges on information and belief that Defendants the HCSD, Puckett, Hanson, Tulledo, and Dingman actually caused the leak to be created by drilling into the main in order to create the appearance of a "water emergency".

stifle, deny, suppress, and thwart, Plaintiff Harrell's rights under the federal and State constitutions, his statutory rights[26], those rights as provided in the HCSD's Bylaws, Rules and Regulations, and its customs, policies, and practices, and specifically inclusive of his First, Fourth, and Fourteenth Amendment procedural and substantial due process rights, and her Equal Protection rights[27], partly in order to maliciously and vindictively retaliate against Harrell for exercising those, and other statutory rights in opposition to their operations, wrongdoing, and political undertakings.

21. The HCSD and Puckett, Hanson, Tulledo have also failed and refused to respond as required by the United States and California Constitutions, and/or State and local laws, to any of Plaintiff's demands for proper notice, due process, demands to confront evidence and witnesses, CPRA requests, Civil Code §1798.34 requests, and other inquiries related to the official actions taken against him by the Defendants.

22. During the month of July, 2021, the HCSD, Puckett, Hanson, Tulledo, and Dingman along with the aid, assistance, encouragement, and/or ratification of John Does, and as part of the agreed plan to take the wrongful actions against Plaintiff detailed herein without any lawful authority, any due process. To do so, these Defendants wrongfully agreed, planned, and acted to violate the provisions, requirements, and restrictions upon them imposed by: the Constitutions of the United States and of the State of California, and the statutes of California, including, but not limited to, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the US Constitution; the California Constitution at: Article 1, Section 1; Article I, section 7(a); Article I, section 26; Article I, section 3(a)-(b)(1); Article I, section 13; Article I, section 17; and Article I, section 19(a); the Brown Act; Water Code Sections 350-357; Government Code Sections 53069.4, 61045, 61050, and 61051; the HCSD Bylaws; and, the HCSD Rules and Regulations.

23. It is notable that during that since the events of July 19-23, 2021 (and ongoingly), the HCSD, Puckett, Hanson, Tulledo, and Dingman continued to refuse to provide Plaintiff (or any other residents, property owners, and/or customers) with any Constitutionally-adequate notices, and/or any hearings, concerning the "violations" alleged against him in July, 2021; and, the

---

[26] Including, but not limited to, Water Code §106.3.

[27] The governmental entity/agent Defendants specifically plotted, and agreed to take action in furtherance of, the plans to bring baseless, wrongful, unconstitutional governmental and other actions against Plaintiff - but without utilizing the same tactics or actions against any other property owners and/or denizens of the HCSD besides Plaintiff - leading to the reasonable inference that every supposedly official "emergency" act during the month of July was (at least in part) a ruse/pretext abusing governmental power to provide "cover" for adverse actions taken, and false allegations of crimes against Plaintiff in that same month.

Defendants further refused to provide any administrative means to challenge the alleged "violations" and reported crimes, as provided for by State law, the US Constitutions, and in the HCSD's Rules and Regulations, Bylaws, and/or policies, customs, and practices.

24. As noted, all the actions of July 19-23, 2021 were claimed to have been taken by the HCSD, Puckett, Hanson, Tulledo, and Dingman pursuant to the authority of their offices as government officials of the HCSD (or as agents thereof), and pursuant to the provisions of HCSD Resolution 2021-02, which was purportedly adopted by the HCSD Board of Directors on July 16, 2021 pursuant to the authority of California Government Code sections 61000, *et seq*, and of California Water Code section 350.

However, Water Code section 351(a) requires that:

"Except in the event of a wildfire, deenergization event, or a breakage or failure of a dam, pump, pipeline, or conduit causing an immediate emergency, the governing body of a public water supplier shall make a declaration pursuant to Section 350 only after a public hearing at which consumers of the water supply shall have an opportunity to be heard to protest the declaration and to present their respective needs to the governing board."

Furthermore, Water Code section 355 provides that:

"The regulations and restrictions shall thereafter be and remain in full force and effect during the period of the emergency and until the supply of water available for distribution within such area has been replenished or augmented."

Finally, Water Code section 358 provides that:

"Nothing in this chapter shall be construed to prohibit or prevent review by any court of competent jurisdiction of any finding or determination by a governing board of the existence of an emergency or of regulations or restrictions adopted by such board, pursuant to this chapter, on the ground that any such action is fraudulent, arbitrary, or capricious."

As relevant to Plaintiff's claims, HCSD Resolution 2021-02, Section 6(k) provides:

"In the event that the District observes that water use is in violation of these Declaration of Water Shortage Emergency regulations is occurring at a customer's premises, the District may, after a written warning to the customer, authorize installation of a flow-restricting device on the service line for any customer observed by the District to be willfully violating any of the regulations and restrictions on water use set forth in this Declaration of Water Shortage Emergency. In the event that a further willful violation is observed by the District, the District may discontinue service. Charges for the installation of flow-restricting devices or restoring service may be fixed by the District Board of Directors from time to time." (Puckett Declaration, ECF #69-1, p.7.)

25.  Plaintiff seeks a declaration of unconstitutionality of this provision, and an injunction prohibiting enforcement of Resolutions 2021-02, and 2021-09, because the provisions of HCSD's Resolution 2021-02, Section 6(k), and of Resolution 2021-09 Section 7(b), are completely lacking those safeguards generally deemed essential to due process. They provide:

• No constitutionally-adequate notice required to be given (only a "written warning");

• No in-person, adversarial hearing, and no means to request any hearing;

• No neutral decisionmaker;

• No opportunity to call or to cross-examine witnesses;

• No right to review or respond to the government's evidence; and

• No administrative appeal, nor any means to make a record to use for judicial review of any sort.

26.  As a result, the current process by which Plaintiff and other property owners and citizens of the District have the provisions of Resolutions 2021-02, and 2021-09 imposed upon them by Defendants HCSD, Puckett, Hanson, Tulledo, and Dingman is procedurally and facially unconstitutional.  First, each form of Puckett's "notice of violation" themselves are unconstitutional[28], arbitrary and capricious because the "notices" are created on an *ad hoc* basis by Defendant Puckett, and do **not** contain the information required by the Supreme Court in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14-16 (1978), in order to be deemed **actual notice** in the Constitutional sense, while Puckett admitted to this Court that he fails to deliver even those, inadequate, "notices" in compliance with the HCSD's own Rules and Regulations at Sections 2.10, 4.03, and/or 4.15.  (*Id.* ECF #68, pp.17-20; c.f., ECF #26, pp.17, 19, 21, 24; #36, pp.11-15, 19, 26-27. )

27.  The process by which Plaintiff, and other persons of the District, have punishments inflicted against them after receiving such a "notice" (including threats to restrict and/or terminate water service, and/or the actual restriction or termination of water service), violates the Federal and State Constitutions because there is **no hearing**, provided prior to infliction of punishment by these Defendants, that grants the recipient of a "notice" any opportunity to be heard concerning, and/or to confront and oppose the allegations against them.  There is also no

---

[28] Such acts also violate the California Constitution at Article I, Sec.7(a).

post-deprivation hearing given, nor any other means by which a customer may challenge or appeal a determination by the issuer of a "notice" of a "violation"[29].

28. Demonstrating the disregard in which the Defendants hold due process rights, all punishments are determined, imposed, and administered in a summary, arbitrary, and capricious manner by the same official who created and issued the "notice(s)" forming the basis for the punishment(s) - rather than by a detached hearings officer, which is a further deprivation of due process[30]. More, Puckett issues his "notices" on the basis of hearsay statements by Dingman - rather than his own personal observations, and/or any personal investigation.

29. The HCSD and Puckett, Hanson, Tulledo, and Dingman undertook the foregoing wrongful actions in a manner that was on each occasion arbitrary and capricious, without lawful and/or lawfully-invoked authority, while also failing to make proper administrative findings supported by any substantial evidence for those purported actions[31]; and adopted policies customs and practices that acted to, and ratified all acts of Puckett and Dingman to, falsely accuse Plaintiff of violations of the law and of HCSD Resolutions, Bylaws, and/or Rules and Regulations - and without providing due and proper notice, any opportunity for, or any actual hearing(s) to contest their allegations and adverse actions.

30. The HCSD, Puckett, Hanson, Tulledo, and Dingman also operated the HCSD in a willfully negligent, reckless, and dangerous manner by creating the false perception of an "emergency" so as to wrongfully drastically cut the amount of water flowing through, and available from, the HCSD's distribution system. They did so to wrongfully and unlawfully acquire public funds in the form of grants from California and the USDA while also using wrongfully self-awarded emergency powers to harass and retaliate against Plaintiff by trespassing to, searching, and seizing - absent a warrant, proper notice, and without any pre-, or post-deprivation hearing - Plaintiff's CR-V and its contents.

---

[29] Such would be insufficient in the case of impairment and/or terminations of water service anyway. Furthermore, availability of a remedy by post-deprivation injunction is also not "an adequate substitute for a pretermination review". *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 20 (1978).
[30] See *Schweiker v. McClure*, 456 U.S. 188 (1982) (hearing officers serving in a quasi-judicial capacity must meet the due process demand of impartiality)
[31] As well as creating definitions for words which are in direct conflict with existing definitions throughout the Codes of California, and making findings and actions that are not reasonable extensions of the evidence before the Board. Further, those action occurred without any proper notice or opportunity to be heard by Plaintiff, nor any of the other electors of the HCSD, or the public. Plaintiff further alleges some of the HCSD and Puckett, Hanson, Tulledo' actions violated Government Code §§25120, 25123(d), 25124, 25131, and 25132.

## ADDITIONAL ALLEGATIONS AGAINST PUCKETT, HANSON, TULLEDO, DINGMAN, AND THEIR AGENTS

31. Puckett, Hanson, Tulledo, and Dingman took these various wrongful actions under color of law , and of their official capacities as public officials and officers of the HCSD, and also failed to properly supervise, train, and/or control, the other HCSD employee, Board Member, agent, and/or contractor Defendants so that reasonably foreseeable harm would not befall Plaintiff. At all times material, none of Puckett, Hanson, Tulledo had any authorization or authority, created by any Board action pursuant to Government Code §61045, to single-handedly interpret, institute, investigate, apply, or enforce any State laws, nor violations of the HCSD Bylaws, Rules and Regulations, resolutions, ordinances, customs, policies, practices, or motions. On the occasions that any individual Board Defendant did so, although they purported to do so while acting under color of law of their position with the HCSD, and pursuant to its various local laws and rules, they were actually acting outside of the lawful parameters of their "job" as a Board member. Despite this, Puckett, Hanson, Tulledo, and Dingman individually and collectively ratified, aided, and abetted such wrongful conduct by individual Board Members on each occasion it occurred.

32. As a result of these failures and wrongful conduct, Plaintiff's Constitutional and statutory rights; his rights to the equal protection of the laws, and the due process of the laws; his right not to have his personal property seized without warrant, notice, predeprivation hearings, and/or any other due process; rights to speak and petition the government for redress and without retaliation; right to equal treatment under the laws by local government; right to confront witness and evidence against him; right to notice, hearing, and/or a speedy and public trial of accusations against him by the HCSD or any of its officers; and, right to counsel were infringed, chilled, denied, and/or violated. On information and belief, Plaintiff alleges that some John Doe Defendants improperly directed, aided, agreed with, encouraged, assisted, and/or abetted Puckett, Hanson, Tulledo, and/or Dingman in committing that wrongful conduct, and/or ratified their conduct.

33. As demonstrated by their actions as described herein, the HCSD, Puckett, Hanson, Tulledo, and Dingman have exhibited a pattern of arbitrary and capricious enforcement of Resolutions 2021-02, and/or 2021-09; undertaking the seizing of vehicles and other property without any warrant, and without even **seeking** any warrant to do so pursuant to Code of Civil Procedure section 1822.50 *et seq* - all with reckless disregard for Constitutional rights.

34. In addition, as set forth herein, the Defendants passed the Resolutions at issue here in an illegal, and irregular manner, <u>ensuring that there would be absolutely no public scrutiny or opportunity for public comment</u>, which also violated Plaintiff's due process rights, his rights to petition, and to association - as well as those rights as to the other denizens of the District.

35. If this Court does not order Defendants to cease their enforcement of the Resolutions, this pattern of constitutional violations will continue.

## DEFENDANT JOHN DOES

36. At all times material, defendant John Does 1-20 were board members, policy makers, employees, independent contractors, public officials, public officers or agents, instructors, rule enforcers, assistants, co-conspirators, confidants, and otherwise actors and/or agents of the HCSD, the named natural person defendants, the governmental officer and/or agent Defendants, Puckett, Hanson, Tulledo, and/or of each other.

37. The true names and capacities of these John Doe defendants is uncertain at this time, but will be substituted to this Complaint as they are definitely determined and/or discovered.

## FIRST CLAIM FOR RELIEF (Federal Causes of Action)

38. Plaintiff incorporates the foregoing statements of fact and allegations made in this Complaint as if fully set forth. The term "these Defendants" <u>as used in any particular Count</u>, shall *only* mean the Defendants which are specifically named therein, and is <u>not</u> intended to apply to all "Defendants" generally. If Plaintiff states a claim or cause of action only permitting injunctive or other relief, but has asserted a damages claim, Plaintiff reserves his right to all non-monetary relief. Plaintiff intends that her claims concerning animus, discrimination, and equal protection be brought on the basis of arbitrary and malicious governmental conduct without rational basis, as a "class of one"[32], and/or as a disabled person as is appropriate to the context of the claim. As to those causes of action involving the HCSD, Puckett, Hanson, Tulledo, and/or the employees or agents thereof, Plaintiff alleges that each instance of wrongful conduct or rights violation was also result of the implementation of, and conduct conforming to, official policy, custom, or practice of the HCSD as created and implemented by one or more of Puckett, Hanson, Tulledo, and/or the HCSD itself.

---

[32] *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs*, 101 F.3d 1179, 1181 (7th Cir. 1996) ("The equal protection clause does not speak of classes. A class, moreover, can consist of a single member.").

**Count I  4th/5th Amendment Violations; Searches and Seizures Without Warrant**

39.  The HCSD, Puckett, Hanson, Tulledo, Dingman, and John Does, by trespassing onto Plaintiff's property, seizing his property (including his Honda CR-V and its contents) without warrant or due process, violated his rights under the 4th and 5th Amendments to the Untied States Constitution.

**Count II  Conspiracy for Deprivation of Rights: (42 USC 1983)**

40.  Plaintiff alleges that Puckett, Hanson, Tulledo, HCSD, Dingman, and John Does, during times material to this Complaint, knowingly and affirmatively agreed and acted on or about July 19, 20, 21, 22, and 23, 2021 to willfully and deliberately deny Plaintiff's rights to not have his property seized without any warrant, or without due process, without notice, opportunity for a hearing, and/or information on how to have the property restored; and, failing to abide by the rights and privileges granted by the Constitutions and laws of the United States, and the State of California, as well as the HCSD Rules and Regulations, and Bylaws' provisions relating to those notice, due process, property, and other rights - instead undertaking such actions and polices in direct contradiction with those provisions.  Further, these same Defendants acted to deny and interfere with Plaintiff's rights as part of a concerted agreement and plan to retaliate against Plaintiff for his protected First Amendment conduct of filing complaints about the HCSD, Puckett, Hanson, Tulledo, and Dingman to governmental enforcement agencies, and in the courts - and assisting others to do so.   Finally, as part of the agreement to deprive Plaintiff of his rights, Defendants HCSD, Puckett, Hanson, Tulledo, and Dingman created and submitted to the police, false claims of criminal conduct.

**Count III Deprivation of Due Process and Equal Protection**

41.  Plaintiff alleges that Puckett, Hanson, Tulledo, Dingman, and HCSD, during times material to this Complaint, failed to provide Constitutionally adequate notice, and other due process concerning, their accusations against him of violations of the resolutions, rules, policies, customs, and/or practices of the HCSD, as well as the actions the Defendants actually took against her purportedly on the basis of her having violated the resolutions, rules, policies, customs, and/or practices of the HCSD.  These Defendants further failed in their duty to act on, or respond to, Plaintiff's multiple direct requests to them for statutorily-mandated opportunity to an accounting and opportunity for any hearing was a denial of procedural and substantive due process and equal protection on each occasion of that wrongful conduct by these Defendants. The denials by these Defendants of Plaintiff's right to be informed as to any charges; their imposition of punishment absent any hearings; and refusal to communicate the process by which

Plaintiff could take action to oppose them, without any notice or hearing to Plaintiff as to those denials was arbitrary, capricious, oppressive, malicious, vexatious, and deliberately deprived Plaintiff of his rights to due process, and also the equal protection of the laws[33].

### Count IV Deprivation of Equal Protection of the Laws, and to Due Process of Law

42.  The HCSD, Puckett, Hanson, Tulledo, Dingman, Bruce's Towing, and John Does; did improperly and illegally agree and conspire to, and actually did, aid abet, assist, and participate with each other to wrongfully and vindictively deny due process and equal protection of the laws to Plaintiff by aiding and abetting the HCSD, Puckett, Dingman, and Puckett, Hanson, Tulledo to terminate Plaintiff's property rights, and possession/use thereof, and while doing so, to violate, and/or refuse to follow, procedural and other mandates of Federal law[34], State law, and the HCSD's own Rules and Regulations and Bylaws.  They also did so by acting as described in this Complaint to vindictively, arbitrarily, and deliberately punish Plaintiff for protected conduct of making complaints to them[35] and other government agencies, and bringing legal actions against the HCSD and its minions.  These Defendants also did these things without the notice, procedural and substantive due process, and other rights afforded by the Constitution of the United States, and the HCSD Bylaws, and/or Policies.

### Count V Unlawful Retaliation for Exercise of Constitutional Rights

43.  Plaintiff's complaints (both administrative and via legal actions to the courts), assistance to others making complaints, and testimony to the HCSD, courts, and State and Federal enforcement agencies about violations of law, and Plaintiff's statutory and Constitutional rights, and wrongful denial and suppression of Plaintiff's rights granted under the HCSD Rules and Regulations, and Bylaws, entitle her to protection from retaliation by way of wrongful and/or discriminatory adverse action by the HCSD, Puckett, Hanson, Tulledo, and Dingman, as well as those persons acting in agreement and/or joint action with them as government agents.

44.  The HCSD, by and with Puckett, Hanson, Tulledo, and Dingman, along with the other government entity/officer/employee Defendants undertook the wrongful acts herein in part

---

[33] No other person in the boundaries of the HCSD had their property summarily seized during the times material to this complaint, although many parked over water meters.

[34] As discussed in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), and otherwise.  In addition to her procedural challenges, Plaintiff is also asserting a substantive due process claim as to the "official" and/or administrative acts of the HCSD, Puckett, Hanson, Tulledo, and Dingman.

[35] Other citizens and electors from Hornbrook who complained to the HCSD and/or the SWRCB about the HCSD's operations and conduct were not subject to any retaliatory or adverse acts.

to retaliate against Plaintiff for his exercise of First Amendment rights to speak freely, and to petition for redress of grievances to government agencies, and to the Courts.

### Count VII Violations of 42 USC 1985(2) and (3)

45.  The vindictive, retaliatory, and oppressive "plan" by the government agency/officer/employee Defendants, and the acts of using official powers or positions ("force" and/or "intimidation") in furtherance thereof, to prevent and/or intimidate Plaintiff from initiating any, or continuing her then-pending, and/or contemplated administrative complaints and/or legal actions in federal and state courts, to deny her due process, to retaliate against him for his past legal actions, and to prevent, distract, and/or or dissuade her from filing new legal actions against the HCSD, its officers, and others, violated on each such occasion the provisions of, and protections afforded Plaintiff by, 42 USC 1985(2) and/or (3) as a "class of one".

### Count VIII: Violations of 42 USC 1986

46.  The deliberate "plan" by the HCSD, Puckett, Hanson, Tulledo, and Dingman, and their acts of using official powers or positions ("force" and "intimidation") as described herein in furtherance thereof, to prevent and/or intimidate Plaintiff from continuing to make and prosecute her administrative complaints, and/or legal actions against them in federal court, to deny him procedural and substantial due process, to falsify evidence against her in this Court and for the purposes of their prosecution of him, to retaliate against him for his past legal actions in federal and state courts, and to keep him from filing new legal actions in federal court as to the HCSD, and its officers, violated on each such occasion the provisions of, and protections afforded Plaintiff by, 42 USC 1985(2) and/or (3) as a "class of one", so each of those Defendants also violated 42 USC §1986 by failing and/or refusing to take any action to stop, or prevent, the violation of Plaintiff's Constitutional rights.

### ***SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS***

47.  Plaintiff incorporates the foregoing statements of fact and allegations made in this Complaint as if fully set forth.  In making out each of the following "Counts" in this Second Claim for Relief against one or more Defendants, the term "these Defendants" as used in any particular Count, shall mean only the Defendants which are specifically named therein, and is not intended to apply to all "Defendants" named in this action generally.

48.  If Plaintiff states a claim or cause of action that only permits injunctive or other relief, but inadvertently asserted a claim for damages, Plaintiff reserves his right to non-monetary relief as otherwise provided by law, and Government Code section 814.

### Count – I, Violations of HCSD Bylaws and Rules and Regulations

49.  Plaintiff, per Section A-9(26) of the HCSD Bylaws, alleges that Puckett, Hanson, Tulledo, HCSD, and Dingman, in engaging in the conduct alleged herein, did also thus wrongfully, improperly, and illegally, conspire to, and actually did, violate or refuse to follow the mandate of, multiple provisions of the HCSD Bylaws and its Rules and Regulations by: denying Plaintiff equal access to: HCSD facilities; rights to notice and hearings; the water supply; and the benefits and rights granted thereby.   Notice must be given by usps or in person. Any person against whom a violation is alleged must be granted at least 48 hrs to "cure" any defect/rule violations per Sections 2.10 and 4.03.

### Count II - Negligence as to HCSD, Puckett, Hanson, Tulledo, and Dingman

50.  In performing the acts complained of herein, each and all of Puckett, Hanson, Tulledo, Bruce's Towing, and Dingman failed to undertake any reasonable investigations, and acted negligently, recklessly, with wanton indifference and disregard for any possible harm that may have befallen Plaintiff as a result of their failures to abide by the Constitution and laws of the United States, the State of California, and the Rules and Regulations and Bylaws of the HCSD.  (See also, generally, California Civil Code, section 1714.)

51.  Plaintiff alleges that the individual Puckett, Hanson, Tulledo, Bruce's Towing, and Dingman, each owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, the State of California, and the HCSD Policies and Bylaws, but in performing the acts as complained of *ante*, and against Plaintiff under the assumed mantle of employees and/or agents of the HCSD, each breached that duty in recklessly and negligently violating the various Constitutional provisions, Acts, laws, statutes, regulations, codes, and/or the HCSD Rules and Regulations and Bylaws as set forth herein.  As a result of their wrongful acts, Plaintiff suffered psychological and physical harm, economic loss, and general and special damages.

### Count III - Trespassing and Nuisance

52.  Trespass onto private property by agents of the government without a warrant is presumed to violate the Fourth Amendment's prohibition on unreasonable searches, but it is also a cause of action in and of itself under California law[36]. The HCSD, Puckett, Bruce's Towing, and Dingman, absent any right or permission to do so, trespassed to Plaintiff's chattels on multiple occasions on and between the dates of July 19 and 23, 2021, and while there,

---

[36] See CACI Nos. 2000, and 2101.

damaged and interfered with Plaintiff's personal property, and his free use and enjoyment of his personal property, and damaged it.

### Count IV: Violations of California False Claims Act)

53. The agreement, cooperation, and joint action amongst the HCSD, Puckett, Hanson, Tulledo, and Dingman, Warnock, and some John Does resulted in the wrongful falsification of facts to State officers/agents responsible for approving or "moving forward" grant processes, as well as on applications for grants and loans made to the State of California on behalf of the HCSD[37], and the knowing submission of those applications (and related documents) containing false statements by those same Defendants. It was intended that Federal USDA, CWA, and SDWA funding provided to the State of California for disbursal to community water improvements would be diverted to the HCSD, and thence to various favored, "no bid" engineers, contractors, and other assignees and/or associates of the HCSD, Puckett[38], and Warnock.

54. The applications and related documents containing false facts were also necessarily false certifications that the HCSD and its officers/employees/agents were, at all times material, in compliance with the CWA and/or SDWA, as well as all other Federal, State, and local laws when they made application for the funds via the SWRCB and the State of California, and the false statements were made to induce payment to the HCSD of the grant monies. Each of these Defendants participated in these plans and actions despite knowing that the funding they were helping the HCSD wrongfully obtain was provided by the Federal Government to the State of California for enforcing all of the provisions of, and regulations attendant to, the CWA and SDWA, and/or for programs administered by the USDA, EPA, and other federal agencies.

55. Plaintiff has complied with the False Claims Act requirements of service upon the State Attorney General of this Complaint at the time of its filing under seal with the Court.

---

[37] As well as misinformation contained in other documents, including communications to the SWRCB and other public entities - all of which had as the goal convincing the agencies to assist the HCSD in wrongfully processing its applications, and so obtaining funds it was not actually entitled to apply for or to receive.

[38] Puckett, Warnock, and other John Does also knew that the HCSD was required to put jobs up for bids, because Puckett emailed the former General manager of the HCSD, Peter Kampa, and asked him about that. When he was told bids would have to be taken, Puckett, Warnock, and other John Does jointly figured out to "get around" that hurdle, and to direct all the contracts with the grant money to Warnock, by having the HCSD Board create a false/fraudulent "water emergency", and then unlawfully appoint Puckett as the person with sole control over the money and (no-bid) contracting by claiming that there was no general manger in the district, and so no executive branch officer to take on those tasks - despite the fact that the HCSD had appointed Clint Dingman as General manager the month before (July, 2021).

### Count V - Violations of California Constitution

56. The actions of the HCSD, Puckett, Hanson, Tulledo, and Dingman were additionally violations of Plaintiff's rights under the California Constitution at: Article 1, Section 1; Article I, section 7(a)[39]; Article I, section 26; Article I, section 3(a)-(b)(1); Article I, section 13; Article I, section 17; and Article I, section 19(a).

### Count VI – Willful and/or Negligent Infliction of Emotional Distress

57. Plaintiff alleges that the HCSD and Puckett, Hanson, Tulledo, Bruce's Towing, as well as Defendant Dingman, in performing the acts complained of herein as to any particular one of them, or identified group of them, did so while acting negligently, recklessly, wantonly, vindictively, and/or willfully to vex, harass, oppress, and annoy Plaintiff, and/or to subject her to lasting fear, anger, upset, anxiety, public humiliation, embarrassment, outrage, financial loss, destruction of her real and personal property, interference with the use and enjoyment of his property, devaluation of her real property, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for possible harm that may have befallen Plaintiff as a result.

### Count VII  Violation of Government Code §§61045, 61050, 61051

58. The HCSD was at all times material mandated by law to have a General Manager whose duties are those set forth in Government Code §61050, and subject to section 61051.  At all times material, the HCSD and Puckett, Hanson, Tulledo failed and refused to delegate duties to a General Manager, and instead wrongfully operated the HCSD administration, as well as oversight of its finances and water facilities' day-to-day operations, directly themselves via individual *ultra vires* acts by Defendants Puckett and/or Hanson in violation of Government Code §61045, 61050, and 61051.  Plaintiff's seeks a declaration that such acts by Puckett, Hanson, Tulledo, and/or each of them individually, are void, and an injunction of the Court prohibiting any individual acts of administration by any Board Defendant, or their successors.

---

[39] Due process guaranteed under Article I § 7 of the California Constitution  "presumes that when an individual is subject to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity." *People v. Ramirez* , 25 Cal.3d 260, 268-69 (1979).  The principle that procedural due process protection is applicable to all adjudicatory action was affirmed in *Saleeby v. State Bar of California*, 39 Cal.3d 547, 563-64 (1985).  The most important distinction to bear in mind is that due process under the California Constitution applies to all adjudicative actions, whereas due process under the United States Constitution is triggered only when liberty or property interests are at stake.

**Count VIII  Conversion**

59.  The wrongful seizure of Plaintiff's personal property by the HCSD, Puckett, Hanson, Tulledo, and Dingman, and the interference with Plaintiffs dominion, control, and use of his property, without any notice, or other due process, and without any payment of just compensation to Plaintiff, was wrongful, interfered substantially with Plaintiff's use and control over his property, and constituted unjust conversion of Plaintiff's property, harming Plaintiff, and resulting in damages equivalent to the value of the property.

**Count IX  Unlawful Adoption of Resolutions and Ordinances in Violation of State Laws**

60.  The HCSD and Puckett, Hanson, Tulledo on July 16, 2021 (and thereafter as applicable) unlawfully, fraudulently, wrongfully, arbitrarily, and capriciously adopted HCSD Resolution 2021-02, and thereafter undertook to so enforce its provisions, against Plaintiff;

61.  The Defendants, on or about December 20, 2021, unlawfully, fraudulently, wrongfully, arbitrarily, and capriciously adopted HCSD Resolution 2021-09[40], which also, in part, incorporated, adopted, and related to Resolution 2021-02.  The Defendants thereafter acted to repeatedly apply and enforce against Plaintiff (and the public) the provisions of Resolution 2021-09, and of Resolution 2021-02, in manners that were facially (and as applied) unlawful, fraudulent, wrongful, reckless, arbitrary, capricious, and deliberately indifferent to Plaintiff's (and the public's) federal and state statutory and constitutional rights.

62.  Defendants HCSD and Puckett, Hanson, Tulledo undertook that wrongful conduct by: failing and refusing to respond to requests for hearing as to allegations made by Defendants Puckett, HCSD, and Dingman in July, 2021 (ECF #26), which they contend were the basis for their enforcement actions against him; failing and refusing to respond to his requests for information concerning any administrative procedures;

63. The adoptions, implementations, and enforcements against Plaintiff (and those members of the public who are HCSD customers, residents, and/or property owners) of Resolutions 2021-02, Resolution 2021-09, and/or each or any of the provisions of those and each later versions of similar Resolutions, were undertaken and accomplished by Defendants HCSD and Puckett, Hanson, Tulledo in a manner that deprived Plaintiff (and other HCSD customers) of substantive and procedural due process relating to property and liberty rights recognized by the

---

[40] A true copy of Resolution 2021-09 is available at the HCSD's website at:
https://hornbrookcsd.specialdistrict.org/2021-12-20-regular-board-meeting

United States Supreme Court (water service)[41]; and, in manners which were reckless, deliberately indifferent, and/or arbitrary and capricious as to Plaintiff's due process and property rights under the 4th and 14th Amendments of the United States Constitution, and of Article I, Section 7(a) of the California Constitution. Defendants have no legitimate interest in enforcing laws that directly conflict with established Federal and State Constitutional rights/procedures, and so each of the HCSD's Resolutions is invalid under the Supremacy Clause of the United States Constitution (and of Article XI, Section 7 of the California Constitution), because no "Resolution", nor the "Rules and Regulations" of the HCSD can abrogate the mandate of "the Constitution's declaration that federal law is to be supreme." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009);

64. The method of adoption, and the provisions of Resolution 2021-02 (and particularly Section 6 thereof), and of Resolution 2021-09 (and particularly Section 7 thereof) were, and are, in direct conflict with the provisions and requirements of the United States Constitution[42], as well as the Constitution and laws of the State of California[43], such that the Resolutions are void as to those conflicts, and so unenforceable;

65. The Defendants have unlawfully, arbitrarily, capriciously, and with deliberate indifference to Plaintiff's Constitutional and statutory rights, adopted, then extended the purported effective periods of Resolutions 2021-02 and 2021-09 well past any time of arguable "emergency", and done so without public hearings required by law. Also, by unilaterally and *ultra vires* continuing to impose and enforce the expired provisions thereof upon Plaintiff, and other citizens, denizens, and/or property owners of the District, deprived Plaintiff and the public of full and complete water service - as well as interference with prospective economic advantage and benefits, and the benefits of contracts made with HCSD water customers - and have done so without affording Plaintiff, and other persons of the District, Constitutionally adequate (or often any) substantial and procedural due processes relating thereto - which due process(es) and water service they are entitled by right. These Defendants were at all times without lawful authority to do each or any of those things; and,

---

[41] See *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978); ECF #44.

[42] The Supremacy Clause directs that the "laws of the United States ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

[43] Cal. Const. at: Art. I, Sec.3; Art. I, Sec.7; Art. I, Sec.13; Art. XI, Sec.7. See also Water Code §§350-358

66. Resolutions 2021-02, and 2021-09, as well as the actions of the Defendants in conspiring to unlawfully implement, implementing, extending, and enforcing those Resolutions as described herein, are in violation of the Constitution and laws of the United States, and of the State of California, and of Plaintiff's rights granted thereby. Those actions by these Defendants are thus causing irreparable injury to Plaintiff, and to the other customers, property owners, and/or residents of the District, and so this Court's issuance of an Order prohibiting the HCSD from continuing to inflict such injury by enforcing Resolutions 2021-02, and 2021-09 is also in the public interest.

**Count X - Violation of the Bane Act - HCSD, Puckett, Hanson, Tulledo, and Dingman**

67. "The California Bane Act creates a cause of action against a person if that person 'interferes by threat, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States.' " *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018).

68. The conduct of Puckett (which was agreed to, approved of, and ratified by Hanson and Tulledo at later meetings of the Board and otherwise) in sending threatening emails to Plaintiff; and of Puckett and Dingman in searching and seizing Plaintiff's CR-V unreasonably, and without a warrant by the use of force, violated the Bane Act, and caused harm to Plaintiff. As a result, Plaintiff is entitled to genera, special, compensatory, and statutory damages of these Defendants.

**The Actions of These Defendants Resulted in Damages to Plaintiff**

69. Plaintiff alleges that the actions by the specified Defendants as set forth in each of the foregoing "counts" of her First and Second Claims for Relief, and as incorporating the factual allegations against each Defendant as specified in their respective Sections, caused general, special, and pecuniary damages to Plaintiff, in an amount to be proven at trial, but in no event less than $50,000.00 per event, circumstance, alleged tort, or statutory violation, and so no less than $500,000.00 in total. Plaintiff is also entitled in each instance to any additional statutory damages, civil penalties, and/or other relief provided by law.

**Punitive Damages Demand**

70. The actions of each of Defendants Puckett, Hanson, Tulledo, and Dingman herein, as described in this Complaint in the First and Second Claims for Relief pertaining to any of them, were reckless, willful, wanton, vindictive, and/or oppressive, and done with willful, or at least wanton and reckless, disregard for Plaintiff's rights, and harm that may have befallen Plaintiff, while also being generally the product of ill-will towards Plaintiff, and so Plaintiff hereby

demands punitive and exemplary damages as to each and all of these Defendants in the amount of $100,000.00 for each instance thereof as occurred on or about July 19, 20, 21, 22, and/or 23, 2021.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

71.  Plaintiff requests that the Court grant a preliminary and permanent injunction against the HCSD, Puckett, Hanson, Tulledo, and Dingman that bars them from trespassing upon his real and/or personal property; or, unreasonably searching or seizing his personal property without a warrant, and/or proper notice and other due process mandated by law and/or the United States Constitution; and also permanently enjoining the HCSD, Puckett, Hanson, Tulledo and Dingman from acting to terminate or impair Plaintiff's water service without proper, and properly served, notice(s) and opportunity for hearing; from taking or using any portion of Plaintiff's land[44] without just compensation, easement, or her written permission - or from terminating Plaintiff's water service without complying with the provisions of the HCSD's Rules and Regulations and/or Bylaws (including the provisions that service of notices be by personal delivery or USPS mail - and specifically not via the mechanisms of email or "taping them to the fence" of Plaintiff's real property), as well as all State laws, and the California and United States Constitutions hereafter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff now prays for judgment against Defendants, as well as:

1.  Declaration of the respective rights and duties of the parties under the foregoing authorities, and particularly a declaration that the purported official actions taken by the HCSD and Puckett, Hanson, Tulledo during the month of July and otherwise were improperly and/or defectively written and adopted in a statutorily, procedurally, and administratively defective manner that was arbitrary and capricious while also being not supported by a proper record and/or substantial evidence, and that those actions are void, while the individual resolutions, motions, and ordinances adopted by them are legally defective additionally on the basis of conflict with the Constitutions and laws of the United States and/or the State of California, while the HCSD, Puckett, Hanson, and Tulledo's findings pertaining thereto are themselves not supported by substantial evidence, and/or are arbitrary and capricious and/or fraudulent, and so void additionally on those bases;

---

[44] Including by profiting from underground pipelines without any easement to do so, and/or by coming onto Plaintiff's land other than in case of emergency, and to read the meter once each month.

2. For general, special, economic, statutory, and exemplary damages determined at trial;

3. Disgorgement by Dingman of all wasted public funds, and/or gifts of public funds received by Dingman relating to any unlawful and/or unconstitutional duties, or those activities unilaterally and/or *ultra vires* assigned him by Puckett and/or Hanson without compliance with Government Code §61045;

4. An Order commanding the HCSD to immediately (within 30 days) hire a General Manager as required by Government Code §61050, who shall assume all duties as set forth in Government Code §§81050 and 61051, and to henceforth maintain the General Manager or his/her successors in those capacities hereafter without interference from, or direction by, any individual Board members, and/or directives being given other than as provided by Government Code section 61045;

8. For a preliminary injunction and a permanent injunction, each enjoining the HCSD, Puckett, Hanson, Tulledo, and Dingman from damaging, or seizing Plaintiff's personal property without a warrant, without complete notice and due process as provided in the HCSD's Bylaws, Rules and Regulations, and/or as mandated by the US and California Constitutions;

10. For preliminary and permanent injunctions, each prohibiting the enforcement of any Rule, Bylaw, Motion, Resolution, or Ordinance of the HCSD that purports to grant the authority to any agent, employee, or Officer of the HCSD the authority to trespass upon, or to seize, private property absent a warrant in conformance with the Fourth Amendment of the US Constitution;

11. An Order declaring each purported act, agreement, motion, resolution, ordinance, and/or contract, of (and/or between) Puckett, Hanson, Tulledo, Dingman, and/or the HCSD, taken in violation of the HCSD's Rules and Regulations or Bylaws, Government Code §61045, the False Claims Act, Public Works Laws, and/or the provisions or requirements of any other State law, to be *ultra vires,* and/or void for illegality[45];

12. A declaration that the seizure of Plaintiff's property was done unlawfully, without proper notice and/or properly served notice, and without any procedural or substantial due process, in violation of State law, the California Constitution, the United States Constitution, and

---

[45] California <u>Civil Code</u> §1608 codifies the doctrine of illegality and provides that "[i]f any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Under <u>Civil Code</u> §1667 , "unlawful" is broadly defined as that which is contrary to an express provision of law; contrary to the policy of express law, though not expressly prohibited; or, otherwise contrary to good morals.

the HCSD's own Rules and Regulations and/or Bylaws; and, an Order that Plaintiff's water service immediately (within 24 hours of service upon the HCSD, a Board Defendant, or Dingman of an Order to do so) be fully restored and maintained hereinafter[46];

13. For statutory damages under 42 USC §1983 in the amount of $500,000.00 against each of the individual government agency/entity officer/employee Defendants (inclusive of John Does), the HCSD, Puckett, Hanson, Tulledo, and Dingman;

14. An injunction prohibiting Puckett, Hanson, and/or Tulledo from taking <u>individual *ultra vires*</u> acts which attempt to usurp the authority of the HCSD and/or its Board as a body in violation of Government Code §§61045, 61050, and/or 61051 - inclusive of issuing "violations"; purporting to impose punishments for "violations"; ordering trespass to, search of, or seizure of property absent a warrant to do so; and/or shutting off the water service to customers of the HCSD;

15. For any attorney fees and costs of suit herein actually incurred; and,

16. For such other and further relief as the court may deem just and proper.

Dated this ____ day of July, 2023.

Peter T. Harrell, Plaintiff Pro Se

### Verification

I, Peter T. Harrell am the Plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Hornbrook, California.

Dated: 7/14/2023    By: _____

Peter T. Harrell, Plaintiff

---

[46] A trial court may issue a writ of administrative mandate where an agency has deprived the petitioner of a fair hearing pursuant to Code of Civ. Proc., §1094.5, subd.(b).

July 14, 2023

USDC - EDCA
Office of the Clerk
501 I St., Ste 4-200
Sacramento, CA 95814

Re:  Harrell v. Puckett, et al; NEW CASE FILING

Dear Clerk,

Enclosed please find a new complaint for filing, and a money order for the filing fee of $402.00

Also, since I cannot count on the USPS to deliver mail very timely these days, I am attaching a copy of the USPS Priority Mail Label for your convenience should you or the Court need it. ✳

Note that this is in part a California False Claims Act case, so the Complaint should be filed under seal, and I have served it upon the California Attorney General ("AG").  No other action (that is, issuing and service of summons, etc) should happen until such time as we hear from the AG about if they want to get involved.

Thanks very much for your assistance and consideration.

*Peter T. Harrell*

Peter T. Harrell, Plaintiff Pro Se
PO Box 131
Ashland, OR 97520
peterharrell@yahoo.com  (note that email is spotty, because I have no private service)

✳ Since I don't have a USPS account, Ms. Olson printed it for me from hers.



**Click-N-Ship® Label Record**

USPS TRACKING # #:
**9405 5036 9930 0575 9576 30**

| Priority Mail® Postage: | $9.65 |
|---|---|
| Total: | $9.65 |

Trans. #: 591768648
Print Date: 07/14/2023
Ship Date: 07/14/2023
Expected
Delivery Date: 07/17/2023

**From:** KIMBERLY OLSON
PO BOX 243
HORNBROOK CA 96044-0243

**To:** USDC - EDCA - CIVIL CLERK'S OFFICE
STE 4200
501 I ST
SACRAMENTO CA 95814-7303

* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

Cut on dotted line.

## Instructions

1. Each Click-N-Ship® label is unique. Labels are to be used as printed and used only once. **DO NOT PHOTO COPY OR ALTER LABEL.**

2. **Place your label so it does not wrap around the edge of the package.**

3. **Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.**

4. **To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.**

5. **Mail your package on the "Ship Date" you selected when creating this label.**

*Thank you for shipping with the United States Postal Service!*

*Check the status of your shipment on the USPS Tracking® page at usps.com*