

Peter T. Harrell, In Pro Per
PO Box 131
Ashland, OR 97520
peterharrell@yahoo.com
(no phone number)

**NOV 15 2023**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Peter T. Harrell, | Case No: 2:23-CV-1448-TLN-AC |
| Plaintiff, | **FIRST AMENDED COMPLAINT (JURY TRIAL REQUESTED)** |
| vs. | ACTION AT LAW FOR CIVIL RIGHTS VIOLATIONS; PENDENT STATE CLAIMS; |
| Robert Puckett, Sr.; Michele Hanson; Melissa Tulledo; Clint Dingman; Hornbrook Community Services District; Bruce's Towing/Radiator & Dismantling; John Does 1-20 | REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS, AND FOR DECLARATORY RELIEF |
| Defendants, | USC 42 §§1983, 1985, 1986, and 1988 |

## JURISDICTION

1. Jurisdiction over this action arises pursuant to Sections 1331, 1332, and 1343 of Title 28 of the United States Code, as arising under the Constitution and laws of the United States, specifically Article VI, and Amendments 1, 4, 5, 6 and 14 of the United States Constitution; and, sections 1983, 1985, 1986, and 1988 of Title 42 of the United States Code, as an action seeking redress of grievances for violations of rights and privileges secured to Plaintiff Peter T. Harrell ("Plaintiff") by the Constitution and Laws of the United States.  Supplemental jurisdiction (Section 1367) is asserted over Plaintiff's pendent state law claims for relief - including violations of the Hornbrook Community Services District Bylaws ("Bylaws"), and/or the Hornbrook Community Services' District's ("HCSD" or "District") operational policies, practices, and procedures specified on the District's website as "Rules and Regulations" ("Rules" hereinafter)[1].  This action is also brought as provided by the HCSD Bylaws at Sections A-9(1); A-9(13); A-9(26); and, 1-5.030.

2. The times material to this complaint, so far as is known to Plaintiff after reasonable investigation, are <u>July 1, 2021, through and including the date of filing of this action, and</u>

---

[1] The HCSD Bylaws, adopted on April 18, 2014, and the "Rules and Regulations" of the HCSD listed on its website as a PDF link at https://hornbrookcsd.specialdistrict.org/operation-policies are hereby incorporated herein to the extent necessary to make out any applicable claims and/or allegations.

ongoingly as specified.  All claims in this complaint are based upon conduct which occurred, or was discovered[2], during this time period, within Siskiyou County, California.  Concerning Plaintiff's pendent state claims herein, Plaintiff timely and properly provided written notice(s) of his state-law claims to the public employee, entity, and agency Defendants (HCSD, Dingman, Puckett, Hanson, Tulledo) in full compliance with all  requirements of the **California Government Tort Claims Act**, Government Code sections 905[3], 910, and 915.  The HCSD, Puckett, Hanson, Tulledo, and their employees, agents, and/or contractors failed to respond to Plaintiff's claims notices in any way.

## Defendants

3.  Defendants Robert Puckett, Sr. ("Puckett"), Clint Dingman ("Dingman"), Michele Hanson ("Hanson"), and Melissa Tulledo ("Tulledo") are citizens of Siskiyou County, California, and are the Directors and employees of Defendant HCSD, a public entity providing domestic water to the community of Hornbrook, and operating wholly within the County of Siskiyou, a political subdivision of the State of California, created, and at all times material operating, as an independent special district[4] under the laws of California and of the United States, as well as its own duly adopted Bylaws and Policies, and subject to their jurisdiction.  All claims made herein are brought against the natural person defendants in their individual, and official capacities.

4.  Defendant Bruce's Towing/Radiator & Dismantling ("Bruce's Towing") is a business operated and licensed within the City of Yreka, itself within the County of Siskiyou, California. Bruce's Towing willfully and recklessly accepted the unlawful and unconstitutional directions and instruction of Defendants Puckett, HCSD, Dingman, and the John Doe Siskiyou County Sheriff's Deputies (who were themselves agents of Puckett, Dingman, and the HCSD); aided and assisted those Defendants' wrongful trespass onto private property located at 408 Henley-

---

[2] Under law, a cause of action for a claimed harm accrues on the date of its discovery by the Plaintiff. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.)  "Claimed harm" refers to all of the elements of the cause of action, which must have occurred before the cause of action can be said to accrue, and the limitation period begins. (*Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1029.) Federal law applies a similar rule.  See *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998). Plaintiff makes **no** claims in his Complaint concerning **any** events, circumstances, or interactions with any named Defendant herein occurring prior to the date of July 1, 2021, other than any planning and agreement by a Defendant to engage in the events set forth in this Complaint.
[3] The HCSD took no action on the claims, so failing to respond to the claims notice (see CA Govt. Code 910.8; 911; *Martinez v. County of Los Angeles*, 78 Cal.App.3d 242, 245 (1978)).
[4] Special Districts are primarily controlled by the provisions of California Government Code sections 61000, *et seq.*, and in this case, also the California Water Code.

Hornbrook Rd., Hornbrook, California[5] on or about July 19, 20, 21, 22, and/or July 23, 2021; and, aided and assisted those Defendants' wrongful, unreasonable, search, seize, and conversion Plaintiff's private property, a Honda CR-V[6] - all absent any form of warrant, consent, exception to the warrant requirements, due process, or judicial order legitimizing such actions. Such action rendered Bruce's Towing a "joint actor" with the government agency defendants for purposes Plaintiff's 42 USC §1983, and related claims.

5.    The HCSD was at all times material to this complaint governed by a Board of Directors consisting in relevant part of "President" Robert Puckett, Sr.; "Secretary" Michele Hanson, and Director Melissa Tulledo.  The water production and distribution system was operated by HCSD employee Clint Dingman[7].  By naming Puckett, Hanson, Tulledo, Dingman, Bruce's Towing, and the HCSD as co-Defendants, Plaintiff has intended to comply with the provisions of California Government Code 815.3 throughout each applicable cause of action herein, whether specifically set forth, or implied in the recitation of factual allegations.

6.    In doing the acts alleged herein, Defendants Puckett, Hanson, Tulledo, Dingman, Bruce's Towing, and John Does 1 through 20: were acting under color of law of their official capacities as elected officials and/or public employees of the HCSD, and/or as a direct agent of an elected or public official, employee, or officer; and/or, were "jointly engaged" with a public officer or official who was acting under color of law, while engaging in the wrongful conduct alleged in the Complaint.

### Plaintiff

7.    Plaintiff Peter T. Harrell ("Harrell") is a citizen of the State of Oregon, but also a taxpayer and owner of real property within the boundaries of the HCSD.  Plaintiff's citizenship is thus diverse from all of the Defendants' in this case.  Plaintiff engages in farming, ranching, and

---

[5] The HCSD had no right of entry onto that private land except by the owner's express permission (which was not granted at the times material to the Complaint), and it holds no easements thereon.  Plaintiff is not a resident at that property, and does not contract with the HCSD for water service to that residence.  Contrary to the assertions of Puckett and the HCSD, State laws cannot authorize the unconstitutional search and/or seizure of Plaintiff's vehicle - even in the face of Puckett's false report of a crime relating to Plaintiff's parking of his car in the driveway.  See, generally, Vehicle Code §22650; *Morris v. County of Marin*, 18 Cal.3d 901 (Cal. 1977); *Garcia v. City of L. A.*, 611 F. Supp. 3d 918 (C.D. Cal. 2020); *Sandoval v. County of Sonoma*, 72 F.Supp.3d 997, 1007 (N.D. Cal. 2014), aff'd, 912 F.3d 509 (9th Cir. 2018), and aff'd, 912 F.3d 509 (9th Cir. 2018); "The mere fact that a state has authorized a search or seizure does not render it reasonable under the Fourth Amendment."
[6] Further, when Bruce's Towing took Plaintiff's vehicle, it caused extensive damage to the undercarriage due to the lack of training, ineptitude, and the negligence of the tow truck operator.
[7] In Dingman's individual, and official capacities as the HCSD's Systems Operator, shift operator, meter reader, general manager, watermaster, and/or water plant operator.

other gainful economic activity within the boundaries of the HCSD.

8. At times material to this Complaint, Plaintiff has been subjected to attempted arbitrary and capricious (purported) HCSD Rules enforcement without due process; unlawfully (and in violation of the HCSD's own Rules) issued "violations" by email that do not contain any information concerning how and when to contest the allegations thereon[8], and do not allow the (minimum) 48 hours to correct the alleged "violation" that are required by the HCSD's own Rules at Section 4.03 - nor any phone number or other HCSD employee contact information concerning those allegations of "violations". Plaintiff is also a State Certified Water Treatment, and Distribution Operator of grades T2 and D2, respectively; and, is the former acting General Manager of the HCSD[9] with intimate knowledge of the HCSD's water system.

9. Plaintiff alleges on information and belief that the HCSD, Puckett, Hanson, Tulledo, and Dingman agreed, cooperated, and acted together, to take the wrongful, illegal, and/or civil rights-violating actions against Plaintiff also as part of a scheme to retaliate against Plaintiff for filing governmental complaints and legal actions (and assisting others to do so) involving them, and to prevent him from continuing to do so, because those actions represented a threat to the ~$6.5 million in various grants/funding to the HCSD that Defendants Puckett, Hanson, Tulledo, and Dingman hoped to wrongly profit from, as well as an additional "emergency grant" of some $1,600,000 for a new well and supporting infrastructure they planned to install via unlawful, "no-bid" contracting[10]. Those Defendants applied for, and/or obtained, all of the ~ $8.1 million grant moneys by the use of falsification of facts on government applications and supporting documents, by falsely creating and certifying "emergencies" and other conditions[11] in order to

---

[8] Local governmental water districts must afford anyone subject to adverse action due process per the Supreme Court's holdings in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 20 (1978).

[9] See Gov. Code §§61050, 61051.

[10] These "no-bid" schemes violated California's laws concerning public works, as well as the HCSD's own resolutions adopting California's public works and bidding laws; and, the HCSD Bylaws concerning bidding for jobs - as well as the process of awarding contracts by (unlawfully, and fraudulently) appointing HCSD President Puckett to directly control assignment of jobs and spending of public funds, rather than the General Manager, by claiming the HCSD had no executive staff, when the truth was that Dingman had been appointed as the General Manager just a few weeks prior to the scheme's implementation.

[11] By deliberately over-pumping the wells (instead of rotating their use daily as instructed by the Public Engineer who oversaw their installation) so that production would drop and then claiming that the "wells were going dry"; or, by simply not turning the well pumps on for certain wells for weeks at a time. On information and belief after reasonable investigation over the past two years, Plaintiff alleges that Puckett, Hanson, Dingman, Tulledo, and the HCSD also caused a massive leak in the HCSD water system (that they pretended they could not find) and that they did not report on their grant applications in order to get the "emergency drought infrastructure funding".

bypass bidding and other notice/scrutiny requirements, and to unlawfully continue those emergencies beyond any actual lack of water production or other lawful reason.

10. As part of the scheme to falsely apply for, and wrongly profit from, the grants, the HCSD and Puckett, Hanson, Tulledo, and Dingman (and John Does), created and perpetuated a false "water emergency" on or about July 1, 2021[12]. Then, on or about July 16, 2021, the HCSD, Puckett, Hanson, and Tulledo passed HCSD Resolution 2021-02 (and its later incarnations/alterations - collectively, "the Resolution") in manners contrary to Water Code §§350, 351. 355, 358, and other law. Besides its procedural improprieties, the Resolution deprived Plaintiff and the other property owners of the HCSD of: access to full and complete water service (inclusive of the fire hydrants serving Plaintiff's real property); to Constitutionally adequate notice and opportunity to be heard concerning alleged "violations"; to seizure of private property for government use without due process and without compensation; and, of the notice, hearing, and opportunity to contest the actions of Puckett, Hanson, Tulledo, and the HCSD as required by the Water Code[13].

---

[12] Defendants HCSD and Puckett, Hanson, Tulledo, and Dingman planned, agreed, and assisted each other, and their agents, in planning for, and submitting false claims, applications, contracts, supporting documentation, and other documents to the State of California concerning drought infrastructure and water system repair project grants in order to wrongly receive public funds in the form of special grants; and to spend those public funds wastefully and unlawfully without bids as required by the Public Contract Code and the HCSD Bylaws - all by creating a false "water emergency".

[13] Resolution 2021-02 (attached hereto as Exhibit 1) was purportedly adopted as a declaration of a "water shortage emergency" at a special meeting (Gov. Code §54956.5) of the HCSD's Board of Directors pursuant to Water Code §§350, and 351 (see also Sections 355 and 358). The Resolution stated that that no public hearing would be held, or was required. (Exhibit 1, p. 2:6-9.) However, Water Code §351, in recognition of the property interest "consumers of the water supply" have in that service, *prohibits* adoption of a declaration of water shortage emergency **without** a public hearing except in circumstances of: "a wildfire, deenergization event, or a breakage or failure of a dam, pump, pipeline, or conduit causing an immediate emergency." There was no evidence before the Board of any of those events having happened at the time the Resolution was adopted. At the July 16, 2021 meeting, the Board received no evidence, and made no findings of fact that any of the §351 listed events were the cause of the alleged "water emergency", while the Resolution itself makes no mention of the existence of any of the §351-specified events which would excuse the HCSD from having a public hearing prior to declaring the "water emergency". Further, Plaintiff, after diligent investigation and collection of information, reasonably believes that the HCSD, Puckett, and their agents, all planned and worked together to obtain information about declaring a "Water Code §350 emergency" many weeks prior to doing so on July 16, 2021 so that they could effectively bypass the laws and restrictions relating thereto, with the further unlawful goal of submitting fraudulent grant applications and supporting documents to the SWRCB to "prove" that the HCSD was unable to produce sufficient water for the community, and so purportedly qualified to get those grants. This was especially critical for them because of a then-recent inspection by an Engineer for the SWRCB (Craig Bunas) who verified in his report of that inspection that water production by the existing HCSD wells and infrastructure was sufficient for the needs of the District - even in the highest demand month of July. The "water emergency" was also part of a "plan" by these

Complaint - 5

11.  Concerning Plaintiff's federal claims, and equal protections claims generally, Plaintiff asserts that he was singled out for disparate and discriminatory treatment by the defendants when his vehicle was towed from private property without notice or hearing.  The defendants had no lawful, nor rational basis to do so in a manner contrary to law and to the United States Consitution - other than their malicious intent to retaliate against Plaintiff as a "class of one" for bringing legal actions against the HCSD, and assisting others to do so.  See, generally, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs,* 101 F.3d 1179, 1181 (7th Cir. 1996) ("The equal protection clause does not speak of classes.  A class, moreover, can consist of a single member.").

12.  By adopting and imposing upon Plaintiff the Resolution, the deprivations and punishments commanded thereby were unreasonably, arbitrarily, and capriciously imposed by these Defendants in a manner contrary to law, and later maintained unlawfully after full water system functionality was restored by the independent efforts of the HCSD's customers who found the leak in the main water pipe, fixed it themselves, and restored water to most of the HCSD distribution system[14].  This action by the residents and customers of the HCSD was necessary because the HCSD, Dingman, Puckett, Hanson, and Tulledo did nothing substantial to find or fix the leak, but instead used its crippling effect on the HCSD's water system to advance their fraudulent, unlawful goals of obtaining "emergency" and "urgency" grants of public funds; and, of allowing Puckett to order the contracts disbursed as he saw fit - without any bidding for the public works projects funded by those public funds, nor any review by the Board as a whole.

13.  After investigation of the circumstances of the leak in the HCSD's water main, and the repair of that leak, Plaintiff alleges on information and belief that Defendants the HCSD, Puckett, Hanson, Tulledo, and Dingman actually caused the leak to be created by someone

---

Defendants and other John Does to "stop the lawsuits" by Plaintiff by falsely alleging criminal acts against him - and this unlawful goal was advanced against Plaintiff by Puckett via allegations that any "violation" of the Rules [as determined unilaterally by Puckett] constituted a misdemeanor for which Puckett, Hanson, Tulledo, and the CSD would seek to have Plaintiff charged by the Siskiyou County Sheriff and District Attorney.

[14] See tv news story on Channel 10, Medford, OR at: https://ktvl.com/news/local/amid-water-crisis-small-community-takes-matters-into-its-own-hands   The leak featured on the news story was caused by a 3/8-1/2" hole in the water main, which at 60-70 PSI of water pressure lost at least 25,000 gallons per day  Once the residents of the community of Hornbrook made the repairs (without the permission of the HCSD and Puckett), the State Water Resources Control Board (SWRCB), on the basis of full repressurization of the entire HCSD system, and the ongoing filling of the water tanks, declared that "the emergency is over".  Despite that official determination by the State, Puckett and the other defendants falsely and unlawfully continued the "water emergency" in order to wrongly extract more grant money.

drilling into the main in order to disrupt water service to most of the HCSD's customers, and to create the appearance of a "water emergency" in the eyes of the SWRCB.  Further, after the leak was found and repaired, Puckett, and his agent Dana Barton, attempted to place blame for the leak upon Plaintiff by way of emails to the assigned SWRCB engineer, Craig Bunas, and the SWRCB Regional Director, Barry Sutter.

### Duties of, and/or Applicable to, the HCSD and Public Official/Officer Defendants

14.   As a general rule, each person has a duty to exercise reasonable care to avoid causing injury to others.  (Civ. Code, § 1714, subd. (a); *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771.)  Public agencies and officers, however, *additionally* have a <u>ministerial duty</u> to obey all State and Federal Constitutional and statutory laws[15] (including, but not limited to, provisions of the SDWA and CWA applicable to the HCSD's operations), along with all formally adopted regulations and administrative rules[16]; and, must obey all local rules, regulations, ordinances, and other policies, directives, and practices adopted by motion or resolution of the Board of Directors - those including here the HCSD's own Bylaws, as well as its Rules and Regulations[17].

15.   The Board members, Officers, and employees of the HCSD also owed a fiduciary duty[18] to the District, and to each property owner and water customer in the District[19] to: obey the restrictions of the US and California Constitutions; to obey all Federal, State laws relating to public works; and those restrictions on bidding on public works as provided by the Bylaws and/or Rules.  Thus, these Defendants were under a clear ministerial duty to obey, and under a duty of care to obey, those provisions of law relating to public works, bidding of jobs for those works, and the administration of the bidding process and awards of contracts relating to HCSD public works, so that reasonably foreseeable harms would not occur, yet they repeatedly

---

[15] This includes procedural duties such as the Brown Act (<u>Govt. Code</u> sections 54950, *et seq.*) which is applicable and mandatory upon the HCSD and its Board per <u>Government Code</u> §61044.
[16] See, i.e., 22 CCR §§63750.25, 63765(a).  The HCSD was also specifically required by <u>Government Code</u> section 61043 to hire and maintain a General Manager, whose duties are set forth in <u>Government Code</u> sections 61050 and 61051, and include direct supervision and direction of the "day-to-day" operations of the District, and its employees.
[17] "'Where a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion.' " (*Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1267, italics omitted); see also *Pozar v. Department of Transportation* (1983) 145 Cal. App. 3d 269, 271 (public entity has a ministerial duty to comply with its own rules and regulations where they are valid and unambiguous).
[18] Fiduciary duty of  Directors of a special district providing water is also enshrined at <u>Water Code</u> sections 31007, 71614, and 71616; as well as CA Const. Art. XVI, Section 6. The Bylaws provide that qualified persons may bring an actions on behalf of that duty at Section A-9(1), A-9(13), and/or A-9(26).
[19] See HCSD Bylaws at A-9(26).

breached that duty by engaging in falsification of applications and documents submitted to the State; by creating "water emergencies" that were based upon falsified certifications, declarations, reports, purportedly official communications by Puckett as President, and HCSD Board motions and/or "resolutions"; and, by using those false water emergencies as an excuse to implement and apply to Plaintiff, unlawful, unconstitutional, and Rules-violating enforcement schemes which repeatedly, recklessly, and grossly violated Plaintiff's civil rights with willful indifference to the violation of those rights, and the harms to Plaintiff associated therewith.

16. Further, and more specifically, it is California law that where a public entity such as the HCSD is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular injury[20], the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless it establishes that it exercised reasonable diligence to discharge the duty. (Gov. Code, §815.6.)

17. Each of all these duties apply to claims and allegations herein, and particularly to the claims arising from harms to Plaintiff and his property resulting from the HCSD and its Officers engaging in the violations of The United States and California Constitutions; State laws; the HCSD Rules; and, the HCSD Bylaws as set forth in this Complaint - all of which violated Plaintiff's rights, and damaged him economically. Plaintiff therefore seeks a declaration that: the "declaration of water emergency", and Resolution #2021-02 (and its progeny); the customs, policies, and/or procedures of the HCSD, Puckett, Hanson, Tulledo, and Dingman, as implemented by them and their employees, agents, and/or contractors concerning the trespass to, and seizure of Plaintiff's property absent substantive and procedural due process, are unlawfully contrary to the United States and/or California Constitutions[21], and/or the HCSD Rules and Bylaws.

## **OVERVIEW AND BASIS FOR CLAIMS/ACTION**

18. On or about July 19 - 23, 2021, during a period when there was no usable water in the distribution system to the west side of the Hornbrook community, and no water was flowing

---

[20] This includes the rights and privileges delineated in the United States and California Constitutions.
[21] That is, one of Plaintiff's claims is that the Supremacy Clause applies the US Constitution to prohibit all of the practices and procedures of the HCSD, Puckett, Dingman, and their agents relating to the issuing of "violations" and associated punishments due to inadequate notice; no means or opportunity for hearing before a neutral tribunal; and, no path to judicial review of any administrative actions/punishments imposed by the HCSD, Puckett, or Dingman. Neither does the HCSD provide any means to challenge all the warrantless trespassing, searches, seizures, and conversion of private property to governmental use they inflicted upon Plaintiff.

from the taps of the home at which Plaintiff's vehicle was lawfully parked[22]; the HCSD, Puckett, Dingman, Bruce's Towing, and the John Doe public officer/agents, while acting under color of law, and of their offices as public officer/employees, agreed and acted pursuant to a plan engendered by the HCSD, Puckett, and Dingman to wrongfully, without any lawful authority, due cause, proper notice, warrant, consent, exception to the warrant requirement, or due process, trespassed onto private property located at 408 Henley hornbrook Rd., and onto Plaintiff's chattel, in order to seize (and ultimately convert) Plaintiff's personal property, a Honda CR-V and its contents[23].

19.  At the time they did so, Puckett stated that he had the authority to undertake warrantless trespass, searches, and seizures without any warrant, or exception thereto, under the authority of the HCSD Rules, the "declaration of water emergency", and/or Resolution #2021-02 (and its progeny).  Puckett claimed that these Rules, the declaration, and the Resolution, superseded the protections of the US and California Constitutions, and that he was not required to give any hearings or other means to challenge allegations of "violations" made by him or Dingman on behalf of the HCSD - instead treating the violations issued as *de facto* "convictions" of the allegations made, and meting out immediate punishment without any means of appeal.

20.  While acting on the basis of the "violations" purportedly issued by Puckett by trespassing to and seizing Plaintiff's vehicle on or about July 19-23, 2021, the HCSD, Puckett, and Dingman [24], without lawful authority, due cause, notice, or due process of law[25], acted in

---

[22] The address of this home is 408 Henley-Hornbrook Rd., Hornbrook, CA 96044 (hereinafter, the "Residence").  There were no signs indicating any restrictions on parking at that location, or indicating that the HCSD had any interest in the location at all (and in fact the HCSD does not have any easement or other interest allowing access or control over any portion).  The vehicle was not parked there at the time normally reserved for reading the water meter  (see HCSD Rules, Section 12.07), and notice to move it was not given per the HCSD Rules (Sections 2.10, 4.03, 4.05, 4.29).

[23] The 2001 Honda CR-V and its contents was actually seized [and damaged] twice.  Searches and seizures of property without a warrant or determination by a Court are *per se* unreasonable under the Fourth Amendment, and it is the burden of the government agency undertaking the seizure to prove its legitimacy in every respect. See, i.e., *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)

[24] Plaintiff is informed and believes that some supposedly official acts, including assertion of executive, (ultimately *ex parte* and/or *ultra vires)* power by Puckett and/or Dingman as alleged herein, were unilaterally taken by Dingman and/or Puckett with the later agreement, encouragement, and ratification of Hanson and Tulledo **outside** of any official, properly noticed, and/or or agendized Board meetings, and without compliance with Gov. Code §61045.  Plaintiff reasonably believes that this was done for the purpose of concealing such acts from the public; and, to prevent opposition to those wrongful acts via direct petitioning activities, the provisions of State law, and the provisions of the HCSD Bylaws and/or Rules.  All such acts also violated the provisions of Govt. Code section 61045, and so are void.

[25] Plaintiff was not given **any** advance notice of, nor information on how to challenge the violations alleged, or the actions taken against him, nor how to contest the "violations" issued by Puckett.  The

violation of the Constitutions and laws of the United States and California, and the HCSD's own Resolutions, Rules and Regulations, and Bylaws. On the basis of those actions by Puckett and Dingman, the HCSD, Puckett, Hanson, Tulledo also threatened Plaintiff with, and brought against him, baseless administrative prosecutions based upon their claims of Plaintiff's violation of HCSD Rules and Regulations, but then refused to afford Plaintiff any proper notice thereof[26], hearing, trial, opportunity to confront witnesses and evidence against him, appeal, and/or access to counsel before they *de facto* convicted him *in absentia*, and then imposed punishments upon him by taking his vehicle multiple times.

21. Further, the HCSD and Puckett thereafter stated that Plaintiff (notwithstanding his contractual obligation to the property owner to do so) could not use certain portions of the Residence's driveway upon pain of further unlawful (and without notice) seizures of vehicles. These acts by the HCSD and Puckett, undertaken without any lawful authority, using assumed police powers and imposing punishments for alleged administrative and criminal violations, also constituted malicious prosecution(s) of Plaintiff, and deprived him of liberty and property interests without due process of law, the opportunity to confront and cross examine witnesses and evidence against him, and without opportunity to consult with, or be represented by, counsel at any HCSD proceedings.

22. On information and belief, Plaintiff alleges that the HCSD, Puckett, Hanson, Tulledo, and Dingman engaged in the foregoing acts as part of an agreement and coordinated plan amongst them to act maliciously, with reckless disregard for Plaintiff's rights and any harms that may befall him as a result of their actions.

23. Plaintiff alleges on information and belief that these wrongful acts of the HCSD, Puckett, Hanson, Tulledo, and Dingman were malicious, and calculated to retaliate against Plaintiff for his political and legal activity in opposition to them[27]; and, with deliberate indifference to Plaintiff's statutory and Constitutional rights. These Defendants also thus jointly

---

Defendants' Resolution and "violations" permanently deprive Plaintiff of his Constitutional rights to due process, and the equal protection of the laws.

[26] Defendant Puckett claimed that he gave notice to Plaintiff of allegations against him via email, and by "taping them to the fence" surrounding the Residence. Neither of these methods is accepted as proper service in the 9th Circuit, or the State of California - or even under the HCSD's own Rules and Regulations (at Sections 2.10, and 4.03), and Puckett knew this at the time.

[27] Over the past several years, Plaintiff has brought multiple legal actions against the HCSD and its officers (primarily concerning the Brown Act, and Public Records Act), filed complaints concerning its operations with multiple government agencies (including Cal-OSHA, the SWRCB, the Dept. of Labor, and the federal EPA), and has assisted others in doing those things, much to their angst and irritation.

agreed and acted to systematically and wrongfully stifle, deny, suppress, and thwart, Plaintiff Harrell's rights under the federal and State constitutions; his statutory rights[28]; those rights provided to him in the HCSD's Bylaws, and Rules; and, specifically inclusive of his First, Fourth, and Fourteenth Amendment procedural and substantial due process rights, and Equal Protection rights[29].

24.  The HCSD and Puckett, Hanson, Tulledo have also failed and refused to respond as required by the United States and California Constitutions, and/or State and local laws, to any of Plaintiff's demands for proper notice, due process, demands to confront evidence and witnesses, CPRA requests, Civil Code §1798.34 requests, and other inquiries related to the official actions taken against him by the Defendants.

25.  During the month of July, 2021, the HCSD, Puckett, Hanson, Tulledo, and Dingman as part of the agreed plan to take the wrongful actions against Plaintiff detailed herein without any lawful authority, and/or any due process. To do so, these Defendants agreed, planned, and acted to violate the provisions, requirements, and restrictions upon them imposed by: the Constitutions of the United States and of the State of California, and the statutes of California, including, but not limited to, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the US Constitution; the California Constitution at: Article 1, Section 1; Article I, section 7(a); Article I, section 26; Article I, section 3(a)-(b)(1); Article I, section 13; Article I, section 17; and Article I, section 19(a); the Brown Act; Water Code Sections 350-357; Government Code Sections 53069.4, 61045, 61050, and 61051; the HCSD Bylaws; and, the HCSD Rules.

26.  Since the events of July 19-23, 2021 (and ongoingly), the HCSD, Puckett, Hanson, Tulledo, and Dingman continued to refuse to provide Plaintiff with any Constitutionally-adequate notices, and/or any hearings, concerning the "violations" alleged against him in July, 2021 as the purported basis for the trespasses to, and seizures of his vehicle; and, the Defendants further refused to provide any administrative means to challenge the alleged "violations" and reported crimes, as provided for by State law, the US Constitutions, and in the HCSD's Rules and Regulations, Bylaws, and/or policies, customs, and practices.

---

[28] Including, but not limited to, Water Code §106.3.

[29] The governmental entity/agent Defendants (HCSD, Puckett, Hanson, Tulledo, and Dingman) specifically agreed to take action in furtherance of a plan to use the "emergency declaration", Resolution 2021-02, the HCSD Rules as interpreted by Puckett, and "violations" issued by him, to bring baseless, wrongful, false, unconstitutional, governmental actions against Plaintiff - but without utilizing the same tactics or actions against any other property owners of the HCSD besides Plaintiff - so discriminating against Plaintiff as a "class of one". (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).)

1    27. All the actions of July 19-23, 2021 against Plaintiff and his property were claimed to

2    have been taken by the HCSD, Puckett, Hanson, Tulledo, and Dingman under color of law,

3    pursuant to the authority of their offices as government officials of the HCSD (or as agents

4    thereof), and pursuant to the provisions of HCSD Resolution 2021-02, which was purportedly

     adopted by the HCSD Board of Directors on July 16, 2021 pursuant to the authority of California

5    Government Code sections 61000, *et seq*, and of California Water Code section 350.

6        However, Water Code section 351(a) requires that:

7        "Except in the event of a wildfire, deenergization event, or a breakage or failure of a dam,
         pump, pipeline, or conduit causing an immediate emergency, the governing body of a
8        public water supplier shall make a declaration pursuant to Section 350 only after a public
         hearing at which consumers of the water supply shall have an opportunity to be heard to
9        protest the declaration and to present their respective needs to the governing board."

10

         Furthermore, Water Code section 355 provides that:

11       "The regulations and restrictions shall thereafter be and remain in full force and effect
         during the period of the emergency and until the supply of water available for distribution
12       within such area has been replenished or augmented."

13

         Finally, Water Code section 358 provides that:
14
         "Nothing in this chapter shall be construed to prohibit or prevent review by any court of
15       competent jurisdiction of any finding or determination by a governing board of the
         existence of an emergency or of regulations or restrictions adopted by such board,
16       pursuant to this chapter, on the ground that any such action is fraudulent, arbitrary, or
         capricious."
17

18       As relevant to Plaintiff's claims, HCSD Resolution 2021-02, Section 6(k) provides:

19       "In the event that the District observes that water use is in violation of these Declaration
         of Water Shortage Emergency regulations is occurring at a customer's premises, the
20       District may, after a written warning to the customer, authorize installation of a flow-
         restricting device on the service line for any customer observed by the District to be
21       willfully violating any of the regulations and restrictions on water use set forth in this
         Declaration of Water Shortage Emergency. In the event that a further willful violation is
22       observed by the District, the District may discontinue service. Charges for the installation
         of flow-restricting devices or restoring service may be fixed by the District Board of
23       Directors from time to time." (Exhibit 1, p.7.)

24       28. Plaintiff seeks a declaration of unconstitutionality of this provision, and an injunction

25   prohibiting enforcement of Resolutions 2021-02, and 2021-09, because the provisions of

     HCSD's Resolution 2021-02, Section 6(k), and of Resolution 2021-09 Section 7(b), are

     completely lacking those safeguards generally deemed essential to due process, and so conflict

with the United States Constitution both on their face, and as they are applied to Plaintiff. These Sections are identical, and provide:

- No constitutionally-adequate notice required to be given (only a "written warning");

- No information for in-person, adversarial hearing, and no means to request any hearing;

- No neutral decisionmaker;

- No opportunity to call or to cross-examine witnesses;

- No right to review or respond to the government's evidence; and

- No administrative appeal, nor any means to make a record to use for judicial review of any sort.

29.  As a result, the current process by which Plaintiff and other property owners and citizens of the District have the provisions of Resolutions 2021-02, and 2021-09 imposed upon them by Defendants HCSD, Puckett, Hanson, Tulledo, and Dingman is procedurally and facially unconstitutional.  First, each form of Puckett's "notice of violation" themselves are unconstitutional[30], arbitrary and capricious because the "notices" are created on an *ad hoc, ultra vires* basis by Defendant Puckett (but not authorized by, nor ever officially adopted by the HCSD Board in conformance with Gov. Code §61045), and do **not** contain the information required by the Supreme Court in *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14-16 (1978), in order to be deemed **actual notice** in the Constitutional sense, while Puckett admitted to this Court[31] that he fails to deliver even those, inadequate, "notices" in compliance with the HCSD's own Rules and Regulations at Sections 2.10, 4.03, and/or 4.15.  (case #2:21-cv-01482-KJM-DMC, ECF document #36, pp.11-15, 19, 26-27. )

30.  The process by which Plaintiff has punishments inflicted against him by the orders of Puckett (acting as "President of the HCSD") through such a "notice" (including threats to trespass to, or seize; and, the actual trespass to and/or seizure of Plaintiff's vehicles), violates the Federal and State Constitutions because there is no proper notice of impending governmental action; and **no hearing** provided prior to infliction of punishment by these Defendants, that grants the recipient of a "notice" any opportunity to be heard concerning, and/or to confront and oppose the allegations against them.  There is also **no post-deprivation** hearing given, nor any

---

[30] Under the provisions of the United States Constitution, and the California Constitution at Article I, Sec.7(a).

[31] Puckett's testimony to this Court under oath was taken at a hearing held on September 14, 2021 before the Hon. Dennis M. Cota in case #2:21-cv-01482-KJM-DMC as Document #36.  Although Plaintiff contends much of that testimony was knowingly false, it does contain several admissions of the conduct alleged herein, and so is incorporated at this point to the extent necessary to make out Plaintiff's claims.

other means by which a customer may challenge or appeal a determination by the issuer of a "notice" of a "violation"[32].

31.  Demonstrating the disregard in which the Defendants hold due process rights, all punishments are determined, imposed, and administered in a summary, arbitrary, and capricious manner by the same official who created and issued the "notice(s)" forming the basis for the punishment(s) - rather than by a detached hearings officer, which is a further deprivation of due process[33].  More, Puckett issues his "notices" on the basis of hearsay statements by Dingman - rather than his own personal observations, and/or any personal investigation.

32.  These acts were undertaken in a manner that was on each occasion arbitrary and capricious, without lawful and/or lawfully-invoked authority, while also failing to make proper administrative findings supported by any substantial evidence for those purported actions[34].  The HCSD, Hanson, and Tulledo further acted in their official governmental capacities to ratify all acts of Puckett and Dingman relating to the trespass upon, and seizure of Plaintiff's vehicle; to falsely accuse Plaintiff of violations of the law, and of HCSD Resolutions, Bylaws, and/or Rules and Regulations - and without providing due and proper notice, any opportunity for, or any actual hearing(s) to contest their allegations and adverse actions.

33.  The HCSD, Puckett, Hanson, Tulledo, and Dingman also operated the HCSD in a willfully negligent, reckless, and dangerous manner by creating the false perception of an "emergency" so as to wrongfully drastically cut the amount of water flowing through, and available from, the HCSD's distribution system.  They did so to wrongfully and unlawfully acquire public funds in the form of grants, and to use the wrongfully self-awarded emergency powers in the "declaration of water emergency", and in the Resolution to harass and retaliate

---

[32]  Availability of a remedy by post-deprivation injunction is also not "an adequate substitute for a pretermination review" in the case of deprivation of recognized significant property rights protected by the United States Constitution.  Issues surrounding the entry, search, and seizure of vehicles are long-recognized in this Circuit as meeting those criteria. *Garcia v. City of L. A.*, 611 F. Supp. 3d 918 (C.D. Cal. 2020); *Sandoval v. County of Sonoma*, 72 F.Supp.3d 997, 1007 (N.D. Cal. 2014), aff'd, 912 F.3d 509 (9th Cir. 2018), and aff'd, 912 F.3d 509 (9th Cir. 2018); "The mere fact that a state has authorized a search or seizure does not render it reasonable under the Fourth Amendment."  See also *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 20 (1978).

[33]  See *Schweiker v. McClure*, 456 U.S. 188 (1982) (hearing officers serving in a quasi-judicial capacity must meet the due process demand of impartiality)

[34]  This was also accomplished by creating definitions for words which are in direct conflict with existing definitions throughout the Codes of California, and making findings and actions that are not reasonable extensions of the evidence before the Board.  Further, those action occurred without any proper notice or opportunity to be heard at a public meeting or otherwise by Plaintiff, nor any of the other property owners of the HCSD.  Plaintiff further alleges the actions of the HCSD and Puckett, Hanson, and Tulledo violated Government Code §§25120, 25123(d), 25124, 25131, and 25132.

against Plaintiff by trespassing to, searching, and seizing, Plaintiff's CR-V and its contents - absent a warrant, consent, exigent circumstances, proper notice, and without any pre-, or post-deprivation hearing. This unreasonable, wrongful, reckless disruption of water service at the height of summer in a fire-prone are put Plaintiff's real and personal property at risk, and caused him to suffer unreasonable economic expenses and loss, anxiety, worry, fear, and trepidation that would not have occurred save for Defendants' actions.

## ADDITIONAL ALLEGATIONS AGAINST PUCKETT, HANSON, TULLEDO, DINGMAN, AND THEIR AGENTS

34. At all times material, Puckett, Hanson, Tulledo, and/or Dingman had no authorization or authority, created by any Board action pursuant to Government Code §61045, to individually interpret, institute, investigate, apply, or enforce any: State laws; the HCSD Bylaws, Rules and Regulations, resolutions, ordinances, customs, policies, practices, or motions[35].  On the occasions that any individual Board Defendant did so, although they purported to do so while acting under color of law of their position with the HCSD, and pursuant to its various local laws and rules, they were actually acting outside of the lawful parameters of their "job" as a Board member, since individual board members have no powers under state law (Gov. Code §61045). Despite this, Puckett, Hanson, Tulledo, and Dingman individually and collectively acted under color of law, and of the authority of their public offices, to ratify, aid, and abet the wrongful conduct of Puckett and Dingman concerning the trespass to, and seizure of, Plaintiff's vehicle.

35. As a result of these failures and wrongful conduct, Plaintiff's Constitutional and statutory rights; his rights to the equal protection of the laws, and the due process of the laws; his right not to have his personal property seized without warrant (or exception thereto), notice, predeprivation hearings, and/or any other due process; rights to speak and petition the government for redress and without retaliation; right to equal treatment under the laws by local government; right to confront witness and evidence against him; right to notice, hearing, and/or a speedy and public trial of accusations against him by the HCSD or any of its officers; and, right to counsel were infringed, chilled, denied, and/or violated. On information and belief, Plaintiff alleges that some John Doe Defendants improperly directed, aided, agreed with, encouraged, assisted, and/or abetted Puckett, Hanson, Tulledo, and/or Dingman  in committing that wrongful

---

[35] Rather, such enforcement is the job of the General Manager as described in Government Code Section 61050, and 61051.  The Defendants "get around" the state law mandate that the District hire a General Manager by simply refusing to obey the law.  Defendants then act as *de facto* general managers themselves.

conduct, and/or ratified their conduct.

36. Defendants HCSD, Puckett, Hanson, and Tulledo also agreed to trespass to and seize Plaintiff's vehicles without notice in the future should he park in certain portions of the driveway of the Residence - and told Plaintiff by way of communications to him by Defendant Puckett that this would be so indefinitely.

37. As a result of their actions alleged herein, the HCSD, Puckett, Hanson, Tulledo, and Dingman have thereby exhibited a pattern of arbitrary and capricious enforcement of Resolutions 2021-02, and/or 2021-09; and, in so doing, undertaken the seizure of Plaintiff's vehicles and other property from a private driveway without any lawful basis, warrant, consent, and/or exception to the warrant requirements being applicable. These actions were also taken against Plaintiff without the HCSD, Puckett, Hanson, Tulledo, and/or Dingman seeking any warrant to do so pursuant to Code of Civil Procedure section 1822.50 *et seq*.

38. In addition, Defendants HCSD, Puckett, Hanson, and Tulledo passed the Resolution at issue here in an illegal and irregular manner, ensuring that there would be absolutely no public scrutiny or opportunity for public comment, which also violated Plaintiff's due process rights, his rights to petition, and to association as provided by the Water Code's statutory scheme, *ante*.

39. If this Court does not order Defendants to cease the unlawful and unconstitutional enforcement of the Resolution, the constitutional violations alleged herein will continue.

## DEFENDANT JOHN DOES

40. At all times material, defendant John Does 1-20 were board members, policy makers, employees, independent contractors, public officials, public officers or agents, instructors, rule enforcers, assistants, co-conspirators, confidants, and otherwise actors and/or agents of the HCSD, the named natural person defendants, the governmental officer and/or agent Defendants, Puckett, Hanson, Tulledo, and/or of each other.

41. The true names and capacities of these John Doe defendants is uncertain at this time, but will be substituted to this Complaint as they are definitely determined and/or discovered.

## FIRST CLAIM FOR RELIEF (Federal Causes of Action)

42. Plaintiff incorporates each of the relevant foregoing statements of fact and allegations made in this Complaint as if fully set forth as to each "Count". The term "these Defendants" as used in any particular "Count", shall *only* mean the Defendants which are specifically named therein, and is not intended to apply to all "Defendants" generally, nor to any other "Count". If Plaintiff states a claim or cause of action only permitting injunctive or other

relief, but has inadvertently asserted a damages claim, Plaintiff reserves his right to all non-monetary relief.

43. Plaintiff intends that his claims concerning animus, discrimination, and equal protection be brought on the basis of arbitrary and malicious governmental conduct without rational basis, as a "class of one[36]" as is appropriate to the context of the claim. As to those causes of action involving the HCSD, Puckett, Hanson, Tulledo, and/or the governmental/public official-officer employees or agents thereof, Plaintiff alleges that each instance of wrongful conduct or rights violation was also result of the implementation of, and conduct conforming to, official policy, custom, or practice of the HCSD as created and implemented by one or more of Puckett, Hanson, Tulledo, and/or the HCSD itself.

### Count I  4th/5th Amendment Violations; Searches and Seizures Without Warrant

44. The HCSD, Puckett, Dingman, Bruce's Towing, and John Does, by trespassing onto the driveway curtilage of the home at 408 Henley Hornbrook Rd., and thence onto/into, and also seizing Plaintiff's chattel property (his Honda CR-V and its contents) without notice or any other form of due process; and, without any warrant, consent, or valid exception to the warrant requirement, violated Plaintiff's rights under the 4th and 5th Amendments to the Untied States Constitution.

### Count II  Conspiracy for Deprivation of Rights: (42 USC 1983)

45. Puckett, Hanson, Tulledo, HCSD, Dingman, and John Does, during times material to this Complaint, knowingly and affirmatively agreed on or about July 19-23, 2021 to have Puckett, Dingman, Bruce's Towing, and John Does act to willfully and deliberately deny Plaintiff's rights to not have his property seized: without any warrant, consent, or exigent circumstances; without due process; without notice; without opportunity for a pre- or post-deprivation hearing, and/or information on how to have the property restored; and, failing to abide by the rights and privileges granted by the Constitutions and laws of the United States, and the State of California, as well as the HCSD Rules and Regulations, and the HCSD Bylaws' provisions relating to those notice, due process, property, and other rights - instead undertaking such actions and polices in direct contradiction with those provisions[37]. Further, these same

---

[36] See *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

[37] The claims by Plaintiff in this action arose when Puckett and Dingman, acting pursuant to various purported HCSD resolutions, motions, Rules, etc allegedly applied/enforced as part of the false, unlawfully-invoked, executed, and perpetuated "water emergency", and a "violation" created by Puckett and applied by him and Dingman to Plaintiff, trespassed upon a private driveway to warrantlessly, and

Defendants acted to deny and interfere with Plaintiff's rights as part of a concerted agreement and plan to retaliate against Plaintiff for his protected First Amendment conduct of filing complaints about the HCSD, Puckett, Hanson, Tulledo, and Dingman to governmental enforcement agencies, and in the courts - and assisting others to do so.   Finally, as part of the agreement to deprive Plaintiff of his rights, Defendants HCSD, Puckett, Hanson, Tulledo, and Dingman created and submitted to the police, knowingly false claims of criminal conduct concerning Plaintiff and his parking of the vehicle in the driveway of the Residence.

## Count III Deprivation of Due Process and Equal Protection

46.  The HCSD, Puckett, Hanson, Tulledo, Dingman failed to provide Constitutionally adequate notice, and opportunity for an adversarial hearing concerning: their accusations against him of violations of the resolutions, rules, policies, customs, and/or practices of the HCSD; and, the trespassing and seizures of Plaintiff's property by Puckett, Dingman, Bruce's Towing, and John Does -  purportedly on the basis of his having violated the resolutions, rules, policies, customs, and/or practices of the HCSD.  These Defendants further failed in their duty to act on, or respond to, Plaintiff's multiple direct requests to them for an opportunity for an accounting and hearing concerning their trespass and seizure of Plaintiff's vehicle.  The denials by these Defendants of Plaintiff's right to be informed as to any charges; their imposition of punishment absent Constitutionally-adequate notice and hearing; and, their refusal to communicate the process by which Plaintiff could take action to oppose the allegations of the "violation" by Puckett, was arbitrary, capricious, oppressive, malicious, vexatious, and deliberately deprived Plaintiff of his rights to due process, and also the equal protection of the laws[38].

## Count IV Unlawful Retaliation for Exercise of Constitutional Rights

47.  Plaintiff's complaints about the HCSD (both administrative, and via legal actions to the courts), assistance to others making complaints; testimony to the HCSD, courts, and State and Federal enforcement agencies about violations of law, violations of Plaintiff's statutory and Constitutional rights, and the wrongful denial and suppression of Plaintiff's rights granted under

---

unreasonably, search, seize, damage, and convert Plaintiff's vehicle, a Honda CR-V (twice) on the basis of Puckett's no-notice-or-hearing "violation(s)" of: the "water emergency"; the "Rules": the "emergency declaration"; and/or, "Resolution he alleged against Plaintiff.  In doing so, Puckett, Dingman, and their agents also arbitrarily and capriciously failed to follow the HCSD Rules at Sections 2.10, 4.03, 4.05, 4.15, and 4.29.  At the time they searched, seized, and converted Plaintiff's vehicle, neither Puckett, nor Dingman, possessed the formal approval of the Board, and the identification, required by law for them to even arguably do so under the rules (see Section 4.05).

[38] No other person in the boundaries of the HCSD had their vehicles summarily seized by Puckett, et al during the times material to this complaint.

the HCSD Rules and Regulations, and Bylaws by the HCSD, Puckett, Hanson, Tulledo, and Dingman, entitle him to protection from retaliation by way of wrongful and/or discriminatory adverse action by the HCSD, Puckett, Hanson, Tulledo, and Dingman, as well as those persons acting in agreement and/or joint action with them as government agents.

48.  The HCSD, by and with Puckett, Hanson, Tulledo, and Dingman, individually and while acting through any government entity/officer/employees, undertook the wrongful acts herein in part to retaliate against Plaintiff for his exercise of First Amendment rights to speak freely, and to petition for redress of grievances to government agencies, and to the Courts.

## Count V Violations of 42 USC 1985(2) and (3)

49.  Plaintiff alleges on information and belief that the vindictive, retaliatory, and oppressive plan created and agreed to by the HCSD, Puckett, Hanson, Tulledo, and Dingman to subject Plaintiff to deprivations of his Fourth and Fourteenth Amendment rights; and, the acts of using their official powers and positions ("force" and/or "intimidation") in furtherance thereof by trespassing upon, and seizing, Plaintiff's property, was calculated to prevent and/or intimidate Plaintiff from initiating any further, and/or continuing then-pending, or contemplated administrative complaints and/or legal actions in federal and state courts, as well as to retaliate against him for his past such protected actions - thereby violating the provisions of, and protections afforded Plaintiff by, 42 USC 1985(2) and/or (3) as a "class of one"[39].

## Count VI: Violations of 42 USC 1986

50.  Plaintiff hereby incorporates the allegations of Count V, above, as if fully set forth. Because the deliberate "plan" by the HCSD, Puckett, Hanson, Tulledo, and Dingman, to undertake their acts of using official powers or positions ("force" and "intimidation") to trespass to and seize Plaintiff's property was calculated to prevent and/or intimidate Plaintiff from continuing to make and prosecute his administrative complaints, and/or legal actions against them in state and federal court; to deny him procedural and substantial due process; to falsify evidence against him; to retaliate against him for his past legal actions in federal and state courts; and, to attempt to intimidate and prevent him from filing new legal actions in federal court as to the HCSD, and its officers; these Defendants violated the provisions of, and protections afforded Plaintiff by, 42 USC 1985(2) and/or (3) as a "class of one"; each of those Defendants also

---

[39] Other citizens and electors from Hornbrook who complained to the HCSD, the SWRCB, and/or other governmental agencies about the HCSD's operations and conduct were not subject to any retaliatory or adverse acts.

violated 42 USC §1986 by failing and/or refusing to use their governmental authority and powers to take any action to stop, or prevent, the violation of Plaintiff's Constitutional rights.

### Count VII:  Declaratory Relief

51.  The adoptions, implementations, and enforcements against Plaintiff of trespassing to and seizing his property by way of Resolutions 2021-02, Resolution 2021-09, and/or each or any of the provisions of those and each later versions of similar Resolutions purporting to modify or amend Resolution 2021-02, were undertaken and accomplished by Defendants HCSD, Puckett, Hanson, Tulledo, and Dingman in a manner that deprived Plaintiff of substantive and procedural due process rights relating to property and liberty rights recognized by the United States Supreme Court[40]; and, in manners which were reckless, deliberately indifferent, and/or arbitrary and capricious as to Plaintiff's due process and property rights under the 4th and 14th Amendments of the United States Constitution; and, of Article I, Section 7(a) of the California Constitution.

52.  Defendants have no legitimate interest in enforcing laws that directly conflict with established Federal and State Constitutional rights and/or statutory procedures and definitions, and so each of the HCSD's Resolutions, and Puckett-issued "violations" is invalid under the Supremacy Clause of the United States Constitution (and of Article XI, Section 7 of the California Constitution), because no "Resolution", nor the "Rules and Regulations" of the HCSD can abrogate the mandate of "the Constitution's declaration that federal law is to be supreme." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009);

53.  The method of adoption, and the provisions of Resolution 2021-02 (and particularly Section 6 thereof), and of Resolution 2021-09 (and particularly Section 7 thereof) were, and are, in direct conflict with the provisions and requirements of the United States Constitution[41], as well as the Constitution and laws of the State of California[42], such that the Resolutions are void as to those conflicts, and so unenforceable;

54.  Defendants HCSD, Puckett, Hanson, Tulledo, and Dingman have unlawfully, arbitrarily, capriciously, and with deliberate indifference to Plaintiff's Constitutional and statutory rights, adopted, then extended the purported effective periods of Resolutions 2021-02

---

[40] See *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978).
[41] The Supremacy Clause directs that the "laws of the United States ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."
[42] Cal. Const. at: Art. I, Sec.3; Art. I, Sec.7; Art. I, Sec.13; Art. XI, Sec.7.  See also Water Code §§350-358

and 2021-09 well past any time of arguable "emergency", and done so without public hearings required by law (Water Code §355). Also, by unilaterally and *ultra vires* continuing to impose and enforce the expired provisions thereof upon Plaintiff, Defendants HCSD, Puckett, Hanson, Tulledo, and Dingman deprived Plaintiff and the public of full and complete water service - as well as interfered with contracts, and prospective economic advantage and benefits - and have done so without affording Plaintiff, and other persons of the District, Constitutionally adequate substantial and procedural due processes relating thereto - such as proper notice, pre-deprivation hearings, etc.

55.  These Defendants were at all times without lawful authority to do each or any of those things, and so Plaintiff is entitled to a declaration by this Court that the Resolution, its progeny, and all of the acts undertaken by the HCSD, Puckett, Hanson, Tulledo, and Dingman are UnConstitutional, and so void.

## ***SECOND CLAIM FOR RELIEF - PENDENT STATE CLAIMS***

56.  Plaintiff incorporates each of the relevant foregoing statements of fact and allegations made in this Complaint as if fully set forth as to each "Count".  The term "these Defendants" as used in any particular "Count", shall *only* mean the Defendants which are specifically named therein, and is not intended to apply to all "Defendants" generally, nor to any other "Count".  If Plaintiff states a claim or cause of action only permitting injunctive or other relief, but has inadvertently asserted a damages claim, Plaintiff reserves his right to all non-monetary relief.

### Count – I, Violations of HCSD Bylaws and Rules and Regulations

57.  Plaintiff, per Section A-9(26) of the HCSD Bylaws, alleges that Puckett, Hanson, Tulledo, HCSD, and Dingman, in engaging in the conduct alleged herein, did also thus wrongfully, improperly, and illegally, conspire to, and actually did, violate or refuse to follow the mandate of, multiple provisions of the HCSD Bylaws and its Rules and Regulations by: denying Plaintiff's rights to notice and hearings, and the benefits and rights granted thereby. The HCSD Rules provide that notice of any potential adverse allegation, determination, or action against a person must be given by USPS mail, or "in person".  Further, any person against whom a violation of the Rules, Bylaws, resolution, or policy is alleged must be granted at least 48 hrs to "cure" any defect/rule violations per Sections 2.10 and 4.03.  Plaintiff was denied those rights.

### Count II - Negligence; HCSD, Puckett, Hanson, Tulledo, Dingman, and Bruce's Towing

58.  In performing the acts of trespassing to and seizing Plaintiff's vehicle, each and all of Puckett, Hanson, Tulledo, Bruce's Towing, and Dingman failed to undertake any reasonable

investigations, and acted negligently, recklessly, with wanton indifference and disregard for any possible harm that may have befallen Plaintiff as a result of their failures to abide by the Constitution and laws of the United States, the State of California, and the Rules and Regulations and Bylaws of the HCSD. (See also, generally, California Civil Code, section 1714.)

59. Plaintiff alleges that Puckett, Hanson, Tulledo, Bruce's Towing, and Dingman, each owed a duty to Plaintiff to reasonably conform their conduct to the laws of the United States, the State of California, and the HCSD Policies and Bylaws, but in performing the acts of trespass to chattel, and seizures of Plaintiff's vehicle under the assumed mantle of employees and/or agents of the HCSD, each recklessly and negligently breached their ministerial duties by violating the Constitutional provisions, Acts, laws, statutes, regulations, codes, the HCSD Rules and Regulations, and/or the Bylaws. As a result of their wrongful acts, Plaintiff suffered harm, economic loss, and damages.

## **Count III - Trespassing**

60. Trespass onto private property by agents of the government without a warrant  is presumed to violate the Fourth Amendment's prohibition on unreasonable searches, but it is also a cause of action in and of itself under California law[43]. The HCSD, Puckett, Bruce's Towing, and Dingman, absent any right or permission to do so, trespassed to, and seized, Plaintiff's chattels (a Honda CR-V) on multiple occasions on and between the dates of July 19 and 23, 2021, and while doing so, damaged and interfered with Plaintiff's personal property, and his free use and enjoyment of his personal property.

## **Count IV - Violations of California Constitution**

61. The actions of the HCSD, Puckett, Hanson, Tulledo, and Dingman were additionally violations of Plaintiff's rights under the California Constitution at: Article 1, Section 1; Article I, section 7(a)[44]; Article I, section 26; Article I, section 3(a)-(b)(1); Article I, section 13; Article I, section 17; and Article I, section 19(a).

---

[43] See CACI Nos. 2000, and 2101.

[44] Due process guaranteed under Article I § 7 of the California Constitution "presumes that when an individual is subject to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity." *People v. Ramirez* , 25 Cal.3d 260, 268-69 (1979). The principle that procedural due process protection is applicable to all adjudicatory action was affirmed in *Saleeby v. State Bar of California*, 39 Cal.3d 547, 563-64 (1985). The most important distinction to bear in mind is that due process under the California Constitution applies to all adjudicative actions, whereas due process under the United States Constitution is triggered only when liberty or property interests are at stake.

## Count V  Violation of Government Code §§61045, 61050, 61051

62. The HCSD was at all times material mandated by law to have a General Manager whose duties are those set forth in Government Code §61050, and subject to section 61051. At all times material, the HCSD and Puckett, Hanson, Tulledo failed and refused to delegate duties to a General Manager, and instead wrongfully operated the HCSD administration, as well as oversight of its finances and water facilities' day-to-day operations, directly themselves via individual *ultra vires* acts by Defendants Puckett and/or Hanson in violation of Government Code §61045, 61050, and 61051. Plaintiffs seeks a declaration that such acts by Puckett, Hanson, Tulledo, and/or each of them individually, are void, and an injunction of the Court prohibiting any individual acts of administration by any Board Defendant, or their successors.

## Count VI  Conversion

63. The wrongful seizure of Plaintiff's personal property by the HCSD, Puckett, Dingman, and Bruce's Towing, and the interference with Plaintiffs dominion, control, and use of his property, without any notice, or other due process, and without any payment of just compensation to Plaintiff, was wrongful, interfered substantially with Plaintiff's use and control over his property, and constituted unjust conversion of Plaintiff's property, resulting in damages.

## Count VII  Unlawful Adoption of Resolutions and Ordinances in Violation of State Laws

64. The HCSD and Puckett, Hanson, Tulledo on July 16, 2021 (and thereafter as applicable) while acting in a manner contrary to law; unlawfully, fraudulently, wrongfully, arbitrarily, and capriciously adopted HCSD Resolution 2021-02, and thereafter undertook to individually enforce its provisions against Plaintiff without notice, hearing, or other due process;

65. The Defendants, on or about December 20, 2021, unlawfully, fraudulently, wrongfully, arbitrarily, and capriciously adopted HCSD Resolution 2021-09[45], which also, in part, incorporated, adopted, and related to Resolution 2021-02. The Defendants thereafter acted to repeatedly apply and enforce against Plaintiff the provisions of Resolution 2021-09, and of Resolution 2021-02, in manners that were facially (and as applied) contrary to law; unlawful; fraudulent; wrongful, reckless, arbitrary, capricious, and deliberately indifferent to Plaintiff's (and the public's) federal and state statutory and constitutional rights by trespassing upon, and seizing without warrant or due process, his vehicle while it was parked upon private property.

---

[45] A true copy of Resolution 2021-09 as incorporated herein is available at the HCSD's website at:
https://hornbrookcsd.specialdistrict.org/2021-12-20-regular-board-meeting

66.  The Defendants have unlawfully, arbitrarily, capriciously, and with deliberate indifference to Plaintiff's Constitutional and statutory rights, adopted, <u>and then repeatedly extended</u> the purported effective periods of Resolutions 2021-02 and 2021-09 well past any time of arguable "emergency", and done so without public hearings required by law.  These Defendants were thus at all times without lawful authority to do each or any of those things.

67.  Resolutions 2021-02, and 2021-09, as well as the actions of the Defendants in conspiring to unlawfully implement, implementing, extending, and enforcing those Resolutions as described herein, are in violation of the Constitution and laws of the United States, and of the State of California, the Water Code, and of Plaintiff's rights granted thereby.  Those actions by these Defendants are thus causing irreparable injury to Plaintiff, and so this Court's issuance of an Order prohibiting the HCSD from continuing to enforce Resolutions 2021-02, and 2021-09 is also in the public interest.

**Count VII - Violation of the Bane Act - HCSD, Puckett, Hanson, Tulledo, and Dingman**

68.  "The California Bane Act creates a cause of action against a person if that person 'interferes by threat, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States.' " *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018).

69.  The conduct of Puckett (which was agreed to, approved of, and ratified by Hanson and Tulledo at later meetings of the Board and otherwise) in sending threatening emails to Plaintiff; and of Puckett and Dingman in trespassing to and seizing Plaintiff's CR-V without a warrant by the use of force, violated the Bane Act, and caused harm to Plaintiff.  As a result, Plaintiff is entitled to general, special, compensatory, and statutory damages.

**The Actions of These Defendants Resulted in Damages to Plaintiff**

70.  Plaintiff alleges that the actions by the specified Defendants as set forth <u>in each of the foregoing "counts" of his First and Second Claims for Relief</u>, and as incorporating the factual allegations against each Defendant as specified in their respective Sections, caused general, special, and pecuniary damages to Plaintiff, in an amount to be proven at trial, but in no event less than $500,000.00.  Plaintiff is also entitled in each instance to any additional statutory damages, civil penalties, and/or other relief provided by law.

**Punitive Damages Demand**

71.  The actions of each of Defendants Puckett, Hanson, Tulledo, and Dingman herein, as described in this Complaint, and as alleged <u>in the First and Second Claims for Relief</u>, were reckless, willful, wanton, vindictive, and/or oppressive, and done with willful, or at least wanton

and reckless, disregard for Plaintiff's rights and the harms that may have befallen Plaintiff, while also being generally the product of ill-will towards Plaintiff, and so Plaintiff hereby demands punitive and exemplary damages as to each and all of these Defendants in the amount of $100,000.00.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

72.  Plaintiff requests that the Court grant a preliminary and permanent injunction against the HCSD, Puckett, Hanson, Tulledo, and Dingman that bars them from enforcing any HCSD Rule, Resolution, policy, custom, or practice of the HCSD and/or any of its Officers which conflicts with the substantive and procedural due process requirements of the Constitution of the United States, and/or of the Constitution of the State of California, and/or of any statute of the State of California.  Plaintiff requests a further injunction prohibiting Defendants Puckett, Hanson, Tulledo, and Dingman from failing to obey and/or comply with any provisions of the HCSD's Rules and Regulations, and/or Bylaws; as well as those of  all State laws, and the California and United States Constitutions hereafter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff now prays for judgment against Defendants, as well as:

1.  Declaration of the respective rights and duties of the parties under the foregoing authorities, and particularly a declaration that the purported official actions taken by the HCSD, Puckett, Hanson, Tulledo, and Dingman during the month of July, 2021 were improperly and/or defectively written and adopted in a statutorily, procedurally, and administratively defective manner that was arbitrary and capricious while also being not supported by a proper record and/or substantial evidence, and that those actions are void, while the individual resolutions, motions, and ordinances adopted by them are legally defective additionally on the basis of conflict with the Constitutions and laws of the United States and/or the State of California, while the HCSD, Puckett, Hanson, and Tulledo's findings pertaining thereto are themselves not supported by substantial evidence, and/or are arbitrary and capricious and/or fraudulent, and so void additionally on those bases;

2.  For general, special, economic, statutory, and exemplary damages determined at trial;

3.  An Order commanding the HCSD to immediately (within 30 days) hire a General Manager as required by Government Code §61050, who shall assume all duties as set forth in Government Code §§81050 and 61051, and to henceforth maintain the General Manager or his/her successors in those capacities hereafter without interference from, or direction by, any

individual Board members, and/or directives being given other than as provided by Government Code section 61045;

4. For a preliminary injunction and a permanent injunction, each enjoining the HCSD, Puckett, Hanson, Tulledo, and Dingman from trespassing to, or seizing Plaintiff's personal property without a warrant, consent, or an exception to the warrant requirement being applicable; and, prohibiting any such trespassing to, or seizing of Plaintiff's personal property without complete notice and due process as provided in the HCSD's Bylaws, Rules and Regulations, and/or as mandated by the US and California Constitutions;

5. For preliminary and permanent injunctions prohibiting the enforcement of any HCSD Rule, Bylaw, Motion, Resolution, or Ordinance that purports to grant the authority to any agent, or Officer of the HCSD to trespass upon, or to seize, private property in any manner conflicting with the Fourth and/or Eleventh Amendments of the US Constitution;

6. A declaration that the seizure of Plaintiff's property was done unlawfully, without proper notice and/or properly served notice, and without any procedural or substantial due process, in violation of State law, the California Constitution, the United States Constitution, and the HCSD's own Rules and Regulations and/or Bylaws;[46];

7. For statutory damages under 42 USC §1983 in the amount of $500,000.00 against each of the individual government agency/entity officer/employee Defendants (inclusive of John Does), the HCSD, Puckett, Hanson, Tulledo, and Dingman;

8. An injunction prohibiting Puckett, Hanson, and/or Tulledo from taking individual *ultra vires* acts which attempt to usurp the authority of the HCSD and/or its Board as a body in violation of Government Code §§61045, 61050, and/or 61051 - inclusive of issuing "violations"; purporting to impose punishments for "violations"; ordering trespass to, search of, or seizure of property absent a warrant to do so; and/or shutting off the water service to customers of the HCSD;

9. For any attorney fees and costs of suit herein actually incurred; and,

10. For such other and further relief as the court may deem just and proper.

Dated this ___8th___ day of November, 2023.

_Peter T. Harrell_
Peter T. Harrell, Plaintiff Pro Se

---

[46] A trial court may issue a writ of administrative mandate where an agency has deprived the petitioner of a fair hearing pursuant to Code of Civ. Proc., §1094.5, subd.(b).

1

2

3

## **Verification**

4

    I, Peter T. Harrell am the Plaintiff in the above entitled action. I have read the foregoing
5   complaint and know the contents thereof. The same is true of my own knowledge, except as to
those matters which are therein alleged on information and belief, and as to those matters, I
6   believe them to be true. I declare under penalty of perjury under the laws of the United States
that the foregoing is true and correct. Executed at Hornbrook, California.

7

8   Dated:  *11/08/23*       By: _Peter T. Harrell_

9                               Peter T. Harrell, Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

**HORNBROOK COMMUNITY SERVICES DISTRICT**

**Resolution No. 2021-02**
**Declaration of Water Shortage Emergency**

**WHEREAS,** drought conditions and water demand in the year 2021 have contributed to a water shortage emergency severely affecting and disrupting the supply of water within the Hornbrook Community Services District such that there is insufficient water for human consumption, sanitation, and fire protection unless emergency water conservation and restriction measures are implemented immediately; and

**WHERAS,** Water Code Section 350 requires that the governing body of a distributor of a public water supply declare a water shortage emergency condition to prevail within the area served by such distributor whenever it finds and determines that the ordinary demands and requirements of water consumers cannot be satisfied without depleting the water supply of the distributor to the extent that there would be insufficient water for human consumption, sanitation, and fire protection; and

**WHEREAS,** the above described drought conditions and water demands have caused a failure to the District's ability to supply water and constitutes an emergency which requires immediate action to be taken; and

**WHEREAS,** pursuant to Water Code Section 351, under the current circumstances the failure of the District water supply qualifies the District to be exempt from causing notice of this Declaration of Water Shortage Emergency to be published in accordance with applicable statutory requirements set forth at Water Code Section 352 and the public hearing process set forth at Water Code Section 351; and

**WHEREAS,** Water Code Section 353 states that when the governing body has so determined and declared the existence of an emergency condition of water shortage within its service area, it shall thereupon adopt such regulations and restrictions on the delivery of water and the consumption within said area of water supplied for public use as will in the sound discretion of such governing body conserve the water supply for the greatest public benefit with particular regard to domestic use, sanitation, and fire protection; and

**WHEREAS,** Water Code Section 354 states that after allocating and setting aside the amount of water which in the opinion of the governing body will be necessary to supply water needed for domestic use, sanitation, and fire protection, the regulations may establish priorities in the use of water for other purposes and provide for the allocation, distribution, and delivery of water for such other purposes, without discrimination between consumers using water for the same purpose or purposes; and

**WHEREAS,** Water Code Section 355 states that such regulations and restrictions shall thereafter be and remain in full force and effect during the period of the emergency and until the supply of water available for distribution within such area has been replenished or augmented; and

**WHEREAS,** Water Code Section 356 states that such regulations and restrictions may include the right to deny applications for new or additional service connections, and provision for their enforcement by discontinuing service to consumers willfully violating the regulations and restrictions; and

1

**WHEREAS,** Water Code Section 357 states that if the regulations and restrictions on delivery and consumption of water adopted pursuant to the above mentioned Water Code Sections conflict with any law establishing the rights of individual consumers to receive either specific or proportionate amounts of the water supply available for distribution within such service area, the regulations and restrictions adopted pursuant to said Water Code Sections shall prevail over the provisions of such laws relating to water rights for the duration of the period of emergency.

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF DIRECTORS OF THE HORNBROOK COMMUNITY SERVICES DISTRICT AS FOLLOWS:

1. That the foregoing recitals are true and correct and are incorporated by this reference as fully set forth herein.

2. The Board of Directors finds and determines, pursuant to Water Code Section 350, that the ordinary demands and requirements of water consumers cannot be satisfied without depleting the water supply of the District to the extent that there would be insufficient water for human consumption, sanitation, and fire protection.

3. The Board of Directors finds and determines, pursuant to Water Code Section 351, that the District's water supply has failed and there exists an immediate emergency to the water supply of the District to the extent that there is insufficient water for human consumption, sanitation, and fire protection and that a such an immediate emergency exempts the District from the noticed published hearing process set forth at Water Code Sections 351 & 352.

4. The Board of Directors declares a Water Shortage Emergency for the year 2021, to take effect immediately upon adoption of this Resolution.

5. The Board of Directors is hereby authorized to adopt such regulations and restrictions on the delivery of water and the consumption within the District of water supplied for public use as will in the sound discretion of such governing body to restrict and conserve the water supply for the greatest public benefit with particular regard to domestic use, sanitation, and fire protection, pursuant to Water Code Section 353.

6. The Board of Directors finds and determines that due to the failure of a reliable water supply to the District, the following restrictions shall immediately apply:

   a. All residential water users shall be restricted to 200 gallons of water per household per day. The District Board of Directors reserves the right to make further adjustments as needed to protect the health and safety of the public.

   b. No new water service connections or commitments for new water service shall be put in place.

   c. Outdoor watering is prohibited, including watering and irrigation of any landscaping, gardens, plants, shrubs, trees, ground cover, turf, grass, and lawn.

d. No new or expanded landscaping, gardens, planting of trees, shrubs, plants, ground cover, turf grass shall be planted, hydroseeded, or laid.

e. The use of running water from a hose, pipe, or faucet for the purpose of cleaning buildings and outdoor hardscape surfaces is prohibited.

f. Filling pools and spas is prohibited.

g. The operation of, and introduction of water into, ornamental fountains is prohibited.

h. Washing of boats, vehicles, and equipment shall be prohibited.

i. Operators of hotels, motels, restaurants and other commercial establishments shall post notice at their establishment or work site a notice of water shortage emergency and shall serve water only upon request.

j. During this declared water shortage emergency the District shall impose other or further regulations, which the District Board of Directors determines to be necessary to ensure that water supply is used only to meet public health and safety needs.

k. In the event that the District observes that water use is in violation of these Declaration of Water Shortage Emergency regulations is occurring at a customer's premises, the District may, after a written warning to the customer, authorize installation of a flow-restricting device on the service line for any customer observed by the District to be willfully violating any of the regulations and restrictions on water use set forth in this Declaration of Water Shortage Emergency. In the event that a further willful violation is observed by the District, the District may discontinue service. Charges for the installation of flow-restricting devices or restoring service may be fixed by the District Board of Directors from time to time.

l. Water waste, as defined below in Section 6(m) of this Declaration of Water Shortage Emergency, is prohibited.

m. "Water waste" means:

    i. Residential water use that exceeds the 200 gallons per household per day limit set above at Section 6(a) of this Declaration of Water Shortage Emergency.

    ii. Water use that violates any water restriction set forth in this Declaration of Water Shortage Emergency.

    iii. Causing or permitting excessive water to discharge, flow, or run to waste into any drain, gutter, sanitary sewer, watercourse, or storm drain, or to any adjacent property, from any tap, hose faucet, pipe,

3

      ii.    Water use that violates any water restriction set forth in this Declaration of Water Shortage Emergency.

      iii.    Causing or permitting excessive water to discharge, flow, or run to waste into any drain, gutter, sanitary sewer, watercourse, or storm drain, or to any adjacent property, from any tap, hose faucet, pipe,

            sprinkler, or nozzle. In the case of irrigation, "discharge," "flow," or "run to waste" means that the earth intended to be irrigated has been saturated with water to the point that excess water flows over the earth to waste.

      iv.    Allowing water fixtures or heating or cooling devices to leak or discharge excessively.

      v.    Backwashing so as to discharge to waste from swimming pools, decorative basins or ponds in excess of the frequency necessary to ensure the healthful condition of the water or in excess of that required by standards for professionally administered maintenance or to address structural considerations.

      vi.    Operation of an irrigation system that applies water to an impervious surface or that is in disrepair.

      vii.    Outdoor watering or irrigation of landscaping.

      viii.    Any other factors as determined by the District Board of Directors.

7. If any provision of this Declaration of Water Shortage Emergency is held illegal or unenforceable in a judicial proceeding, such provision shall be severed and shall be inoperative, and the remainder of this Declaration of Water Shortage Emergency shall remain operative and binding.

Passed and adopted by the Board of Directors of the Hornbrook Community Services District at their meeting held on this _16_ th day of July 2021, by the following vote:

AYES: Puckett, Mellon, Tulledo, Hanson
NOES: 0
ABSENT: 1, Duncan

President of the Board

ATTEST:

Secretary of the Board