IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER T. HARRELL,<br><br>  Plaintiff,<br><br>  v.<br><br>ROBERT PUCKETT, SR., et al.,<br><br>  Defendants. | No. 2:23-CV-1448-KJM-DMC<br><br>FINDINGS AND RECOMMENDATIONS |

   Plaintiff, who is proceeding pro se, brings this civil action. Pending before the Court is Defendants' motion to dismiss Plaintiff's first amended complaint. See ECF No. 14. Plaintiff has filed an opposition. See ECF No. 22. Defendants have not filed a reply.

   In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

1

See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. BACKGROUND

### A. Procedural History

Plaintiff initiated this action with a pro se civil complaint on July 20, 2023. See ECF No. 1. On August 14, 2023, the previously assigned Magistrate Judge (Hon. Allison Claire) issued an order to show cause why the matter should not be dismissed for failure to state a claim upon which relief can be granted. See ECF No. 5. Specifically, Plaintiff was directed to file a first amended complaint addressing the deficiencies noted in the order to show cause. See id. Plaintiff was also directed to file an affidavit explaining why the filing of this matter does not violate Federal Rule of Civil Procedure 11 as an action meant to harass Defendants. See id. Plaintiff filed a response to the order to show cause on August 29, 2023, see ECF No. 9, and the order to show cause was discharged on October 31, 2023, see ECF No. 11 (minute order). Plaintiff filed the operative first amended complaint on November 15, 2023. See ECF No. 12. The matter was reassigned to the undersigned on November 29, 2023, pursuant to a related case order signed by the District Judge. See ECF No. 13.

Defendants filed the pending motion to dismiss on November 29, 2023. See ECF No. 14. Plaintiff filed an opposition on February 12, 2024. See ECF No. 22. Defendants have not filed a reply brief.

### B. Plaintiff's Allegations

Plaintiff is a former acting General Manager of the Hornbrook Community Services District (HCSD), with specific knowledge of HCSD's water system, and is a State Certified Water Treatment and Distribution Operator of grades T2 and D2. See EFC No. 12, pgs. 1 and 4. Plaintiff names the following defendants: (1) Robert Puckett Sr.; (2) Michele Hanson; (3) Melisa Tulledo; (4) Clint Dingman; (5) HCSD; and (6) Bruce's Towing/Radiator & Dismantling. See id. at 1. Thomas Warnock, who is named in the original complaint, is no longer named as a defendant in the first amended complaint.

///
///
///

Plaintiff alleges that Defendant Bruce's Towing accepted the "unlawful and unconstitutional" instructions of Defendants Puckett, HCSD, Dingman, as well as Siskiyou County Sheriff's Deputies. See id. at 2. Plaintiff claims that Bruce's Towing aided and assisted those Defendants' trespass onto private property located at 408 Henley-Hornbrook Rd., Hornbrook, California, between July 19 and 23, 2021, and aided and assisted those Defendants' "wrongful and unreasonable" search, seizure, and conversion of Plaintiff's vehicle, a Honda CR-V, absent any warrant, consent, exception to the warrant, due process, or judicial order allowing such actions. See id. at 3.[1] Additionally, there were no signs indicating any restrictions on parking at that location and no notice was given for the need to move the vehicle. See id. 9 n.22. As a result, Bruce's Towing caused extensive damage to the undercarriage of the vehicle. See id. at 3 n.7.

Plaintiff alleges that Defendants were acting under the color of law in their official capacities as elected officials and/or public employees of HCSD and/or as direct agents of an elected or public official, employee, or officer while engaging in the wrongful conduct. See id. at 3. According to Plaintiff, Puckett stated that he had the authority to undertake trespasses, searches, and seizures without any warrant or exception to the warrant under the authority of HCSD rules, the "declaration of water emergency," and/or Resolution #2021-02. See id. at 9. Moreover, he was not required to give any hearings or other means to challenge allegations of violations made by him and Dingman on behalf of HCSD. See id. Plaintiff states that the violations were instead issued as de facto convictions and set out immediate punishment without any opportunity for appeal depriving Plaintiff of due process and the equal protections of the law. See id. at 9 n.25.

---

[1] These allegations are similar to allegations in Olson v. Puckett, et al., E. Dist. Cal. case no. 2:21-cv-1482-KJM-DMC, in which Kimberly Olson alleges that, around July 20-23, 2021, the same defendants authorized trespass onto her property on Henley-Hornbrook Rd., at which time a vehicle was towed from her driveway during the course of shutting off Ms. Olson's water supply. Ms. Olson alleges the vehicle was towed by Bruce's Towing. Similar allegations are set forth in a complaint filed by Roger Gifford, Gifford v. Dingman, et al., E. Dist. Cal. case no. 2:21-cv-1726-KJM-DMC. Mr. Gifford alleges that his property, including a utility van, was towed by Bruce's Towing from the same Henley-Hornbrook Rd. address on July 20, 2021. The current action has been related to the Olson and Gifford actions. Answers have been filed in the Olson and Gifford actions, and both cases have been scheduled.

Plaintiff next alleges that he has been subjected to HCSD rules enforcement without due process, as well as unlawfully issued violations contradicting HCSD's own rules and that do not contain any information concerning how and when to contest the allegations and do not allow the minimum 48 hours to correct the alleged violations. See id. at 4. Plaintiff claims that HCSD, Puckett, Hanson, and Tulledo threatened him and brought against him baseless administrative prosecutions based on their claims of his violation of HCSD rules and regulations. See id. at 10. Plaintiff further claims that Defendants refused to afford him proper notice, hearing, trial, opportunity to conform witnesses and evidence against him, appeal, or access to counsel before convicting him and imposing punishment by taking his vehicle multiple times. See id.

Plaintiff claims that HCSD and Puckett told Plaintiff that he could not use certain portions of the residence's driveway otherwise his vehicle would again be seized. See id. Plaintiff claims that, through these acts, HCSD and Puckett assumed police powers and imposed punishment for alleged administrative and criminal violations, constituting malicious prosecution of Plaintiff. See id. Additionally, Plaintiff claims that this deprived him of liberty and property interests without due process of law, the opportunity to confront and cross examine witnesses and evidence against him, and the opportunity to consult and be represented by counsel at HCSD proceedings. See id.

Plaintiff alleges that Defendants HCSD, Puckett, Hanson, Tulledo, and Dingman conspired together to take action in violation of Plaintiff's civil rights and to retaliate against him for filing governmental complaints and legal actions, as well as assisting others in doing so. See id. at 4. Plaintiff claims that these Defendants agreed and acted systematically to deny Plaintiff rights under the Federal and State Constitutions, his statutory rights (including Water Code §106.3), those rights provided to him under the HCSD's Bylaws and Rules, his First, Fourth, and Fourteenth Amendment procedural and substantial due process rights, and Equal Protection Rights. See id. 10 and 11. Plaintiff claims that HCSD, Puckett, Hanson, and Tulledo have failed to respond to any of Plaintiff's demands for proper notice, due process, to confront evidence and witnesses, public records requests, California Civil Code § 1798.34 requests and other inquiries

taken by Defendants against Plaintiff. See id. at 11.

Plaintiff alleges that his actions were a threat to the approximately $6.5 million in various grants/funding to HCSD that Defendants Puckett, Hanson, Tulledo, and Dingman hoped to profit from, as well as to the approximate $1.6 million "emergency grant" for the new well and supporting infrastructure planned to be installed via "no bid" contracting. See id. at 4. Plaintiff alleges that the total approximate $8.1 million grant money was applied for and obtained by Defendants by falsification of facts on government applications and supporting documents, as well as by falsely creating and certifying "emergencies" and other conditions in order to bypass the bidding and other notice/scrutiny requirements. See id. at 4 and 5.

Specifically, Plaintiff alleges that Defendants Puckett, Hanson, Tulledo, Dingman, and John Does, created a "false water emergency" on or about July 1, 2021. See id. at 5. They did this by planning and assisting each other in submitting false claims, applications, contracts, supporting documentation, and other documents to the State of California about drought infrastructure and water system repair projects in order to receive funding and profit from it. See id. at 5 n.12. Then, on or about July 16, 2021, HCSD, Puckett, Hanson, and Tulledo passed the HCSD Resolution 2021-02 as a declaration of the water shortage emergency. See id. at 5 & n.13. The Resolution stated that no public hearing would be held or required. See id. Plaintiff claims that HCSD, Puckett, and their agents planned and worked together to obtain information for declaring a "Water Code § 350 emergency" many weeks before doing so on July 16, 2021. See id. Plaintiff claims that Defendants did this to bypass related laws and restrictions. See id. Plaintiff further claims that by submitting fraudulent grant applications and supporting documents to state officials, their goal was to prove that HCSD qualified for the grants due to being "unable" to produce sufficient water for the community. See id. Plaintiff claims that Defendants and other John Does tried to stop Plaintiff's lawsuits by falsely alleging criminal acts against him via allegations that any violations of the Rules constituted a misdemeanor chargeable by the Siskiyou County Sheriff and District Attorney. See id.

///

///

    Plaintiff claims that the Resolution deprived him and other HCSD property owners of access to full and complete water service (including the fire hydrants serving Plaintiff's property); of adequate notice and opportunity to be heard concerning alleged "violations"; and of the notice, hearing, and opportunity to contest the actions of Puckett, Hanson, Tulledo, and HCSD. See id. at 5. Additionally, Plaintiff claims that these Defendants subjected Plaintiff and other HCSD property owners to seizure of private property for government use without due process or compensation. See id.

    Plaintiff claims that he was singled out by defendants when his vehicle was towed from private property without notice or hearing. See id. at 6. Plaintiff believes that Defendants had no lawful or rational basis for doing so other than their malicious intent to retaliate against Plaintiff for bringing legal actions against HCSD and assisting others to do so. See id.

    In July 2021, there was a leak in the main water pipe causing water to be shutoff in the whole town. See id. at 6 n.14. Plaintiff argues that by adopting and imposing upon him the Resolution, Defendants inherently imposed "unreasonable, arbitrary, and capricious" deprivations and punishments upon him contrary to law and continued to do so even after the water was restored to the town. Id. at 6. HCSD, Dingman, Puckett, Hanson, and Tulledo did nothing substantial to find and fix the leak. See id. Instead, HCSD customers found the leak in the main water pipe, fixed it themselves, and restored water to most of the HCSD distribution system. See id. Once the residents made the repairs and the entire HCSD system was repressurized and water tanks full, the State Water Resources Control Board (SWRCB) declared that the water emergency was over. See id. at 6 n.14. Nevertheless, Plaintiff claims that Puckett and the other defendants falsely and unlawfully continued the "water emergency" in order to wrongfully extract more grant money and allow Puckett to order the contracts disbursed as he saw fit without any bidding or any review by the Board. See id. 6 & n.14.

    Plaintiff further alleges that Defendants – HCSD, Puckett, Hanson, Tulledo, and Dingman – actually caused the leak by having someone drill into the main water pipe in order to disrupt water service for most HCSD customers and create an appearance of a water emergency. See id. at 6 and 7. Plaintiff claims that Puckett and his agent, Dana Barton, attempted to place

7

1  blame for the leak onto him by emailing SWRCB engineer, Craig Bunas, and the SWRCB
2  Regional Director, Barry Sutter. See id. at 7.
3  Plaintiff seeks a declaration of unconstitutionality of HCSD Resolution 2021-02,
4  Section 6(k), and an injunction prohibiting enforcement of Resolutions 2021-02 and 2021-09. See
5  id. at 12. Plaintiff claims that HCSD Resolution 2021-02, Section 6(k), and HCSD Resolution
6  2021-09, Section 7(b), are lacking safeguards essential to due process and so conflict with the
7  United States Constitution. See id. at 12 and 13.  Specifically, these sections do not provide:
8  constitutionally-adequate notice required to be given (only a written warning was provided);
9  information for in-person adversarial hearing or means to request any hearing; a neutral decision
10 maker; opportunity to call or cross-examine witnesses; right to review or respond to the
11 government's evidence; or administrative appeal or means to make a record to use for judicial
12 review of any sort. See id. at 13.
13 As a result, Plaintiff claims that the current process by which the provisions of
14 Resolutions 2021-02 and 2021-09 are imposed upon him and other residents by Defendants
15 HCSD, Puckett, Hanson, Tulledo, and Dingman are procedurally and facially unconstitutional.
16 See id.  Furthermore, Plaintiff claims that notices of violations are created by Defendant Puckett
17 on an ad hoc, ultra vires basis and are therefore, unconstitutional, arbitrary, and capricious. See id.
18 Moreover, Puckett fails to deliver these notices in compliance with HCSD's own Rules and
19 Regulations. See id.  The process by which Plaintiff is punished by Puckett via such notices
20 (including threats to trespass to, or seize; and actual trespass to, and seizure of his vehicles)
21 violates the Federal and State Constitutions because there is no proper notice of impending
22 governmental action, no hearing provided prior to infliction of punishment, and no post-
23 deprivation hearing given or other means by which one may challenge the notice of violation. See
24 id. at 13 and 14. Additionally, Plaintiff claims that Defendants HCSD, Hanson, Tulledo, Puckett,
25 and Dingman failed to make proper administrative findings supporting any substantial evidence
26 for the purported violations. See id. at 14.
27 / / /
28 / / /

Plaintiff asserts the following federal claims (which, collectively, Plaintiff labels "First Claim for Relief" with separate "Counts"):

| | | |
|---|---|---|
| Count I | | Fourth/Fifth Amendment Violations; Searches and Seizures Without Warrant. |
| Count II | | Conspiracy for Deprivation of Rights. |
| Count III | | Deprivation of Due Process and Equal Protection. |
| Count IV | | Unlawful Retaliation for Exercise of Constitutional Rights. |
| Count V | | Violations of 42 U.S.C. § 1985(2), (3). |
| Count VI | | Violation of 42 U.S.C. § 1986. |
| Count VII | | Declaratory Relief. |

See ECF No. 12, pgs. 16-21.

Plaintiff asserts the following state law claims (which, collectively, Plaintiff labels "Second Claim for Relief" with separate "Counts"):

| | | |
|---|---|---|
| Count I | | Violations of HCSD Bylaws and Rules and Regulations. |
| Count II | | Negligence. |
| Count III | | Trespass. |
| Count IV | | Violations of California Constitution. |
| Count V | | Violation of California Government Code §§ 61045, 61059, and 61051. |
| Count VI | | Conversion. |
| Count VII | | Unlawful Adoption of Resolutions and Ordinances. |
| Count VIII[2] | | Violation of the Bane Act. |

See ECF No. 12, pgs. 21-24.

/ / /

/ / /

/ / /

---

[2] This claim is also labeled in the amended complaint as "Count VII."

9

## II.  DISCUSSION

In their motion to dismiss, Defendants argue: (1) the first amended complaint fails to state any federal claims upon which relief can be granted; and (2) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  See ECF No. 14-1.

### A.  **Federal Claims**

Defendants argue that each of Plaintiff's federal claims fails to a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6).  See ECF No. 14-1. Because federal Count VII is a request for declaratory relief as a remedy and not a separate legal theory of liability, the Court will below discuss Plaintiff's six substantive federal claims in Counts I through VI.

#### 1.  Count I

In Count I, Plaintiff alleges as follows:

> 44.   The HCSD, Puckett, Dingman, Bruce's Towing, and John Does, by trespassing onto the driveway curtilage of the home at 408 Henley-Hornbrook Rd., and thence onto/into, and also seizing Plaintiff's chattel property (His Honda CR-V and its contents) without notice of any other form of due process; and, without any warrant, consent, or valid exception to the warrant requirement, violated Plaintiff's rights under the 4th and 5th Amendments to the United States Constitution.

ECF No. 12, pg. 17.

Defendants argue that Plaintiff's federal Claim I fails to state a claim for either trespass or illegal search and seizure.  See ECF No. 14-1, pgs. 4-6.

##### a.  Trespass

Defendants argue that Plaintiff cannot state a claim for trespass because he lacks standing.  See id. at 4-5.  According to Defendants:

> In this case, Plaintiff lacks standing to bring a claim under the 4th and 5th Amendments for violations related to trespassing. Plaintiff admits he did not reside at the subject residence. He did not otherwise allege he had actual possession or a present right of possession in the subject property. Therefore, the Court should dismiss Plaintiff's claim for civil trespass.

Id.

///

10

   Defendants' argument is persuasive.  "In order to maintain an action for trespass, a plaintiff must be in actual possession of the property or have a present right of possession." <u>Prado v. Chase Home Fin.</u>, 2009 U.S. Dist. LEXIS 78137, at *12 (E.D. Cal. 2009) (citation omitted).  As Defendants note, Plaintiff does not allege that he owned or resided at the property on Henley-Hornbrook Road.  As such, he has not alleged a right of possession as to that property such as is required to support a claim for civil trespass.  Plaintiff's federal Count I should be dismissed with leave to amend to allege facts, if they exist, showing that he had a right of possession as to the Henley-Hornbrook Road property.

   b. <u>Search and Seizure</u>

   Defendants contend that Plaintiff's search-and-seizure claim fails because he has not alleged facts plausibly indicating the lack of probable cause for law enforcement to seize his vehicle and contents from the Henley-Hornbrook Road property.  <u>See</u> ECF No. 14-1, pg. 5.  According to Defendants: "It is implausible law enforcement removed his vehicle at a water district employee or supervisor's request without a basis but to do Defendants' will."  <u>Id.</u>

   This argument is not persuasive.  Contrary to Defendants' assertion, it is entirely plausible, in light of all of the allegations contained within the first amended complaint, that Defendants fabricated a reason that would provide probable cause to law enforcement (such as the need to check water meters at the subject residence) but held the true intent to retaliate against Plaintiff by seizing his vehicle and its contents.  To the extent Defendants can produce evidence showing that law enforcement in fact had a legitimate basis to seize Plaintiff's vehicle and its contents, Defendants may litigate the issue later in the proceedings on summary judgment or at trial.  Defendants' motion to dismiss should be denied as to the search-and-seizure component of Plaintiff's federal Count I.

   2. <u>Count II</u>

   In Count II, Plaintiff alleges that Defendants conspired to commit the violation of Plaintiff's rights alleged in Count I.  <u>See</u> ECF No. 12, pgs. 17-18, ¶ 45.  Defendants argue that this claim must be dismissed because Plaintiff fails to allege sufficient facts under a heightened pleading standard to support a claim of conspiracy.  <u>See</u> ECF No. 14-1, pg. 6.

The Court disagrees. "A [conspiracy] claim . . . must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988); see also Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991).  Here, Plaintiff alleges that Defendants acted in concert to fabricate a "water emergency" for the purpose of obtaining grant money for their own use.  Plaintiff further alleges that, pursuant to the "water emergency" resolutions passed by the HCSD and the individual defendants, Plaintiff was charged with various water use violations, without notice of a hearing, and that, after Plaintiff complained about the alleged improper conduct, Defendants directed the seizure of his property by law enforcement officials, also without notice or a hearing.  These allegations go beyond the mere conclusory and rise to the level of a plausible claim for relief.  The totality of Plaintiff's allegations is sufficient to put Defendants on notice of his claim that they conspired with each other to violate Plaintiff's rights.  Defendants' motion to dismiss should be denied as to federal Count II.

        3.      Count III

In Count III, Plaintiff alleges as follows:

> 46.    The HCSD, Puckett, Hanson, Tulledo, Dingman failed to provide Constitutionally adequate notice, and opportunity for an adversarial hearing concerning: their accusations against him in violation of the resolutions, rules, policies, customs, and/or practices of the HCSD; and, the trespassing and seizures of Plaintiff's property by Puckett, Dingman, Bruce's Towing, and John Does – purportedly on the basis of his having violated the resolutions, rules, policies, customs, and/or practices of the HCSD.  These Defendants further failed in their duty to act on, or respond to, Plaintiff's multiple direct requests to them for an opportunity for an accounting and hearing concerning their trespass and seizure of Plaintiff's vehicle.  The denials by these Defendants of Plaintiff's right to be informed as to any charges; their imposition of punishment absent Constitutionally-adequate notice and hearing; and, their refusal to communicate the process by which Plaintiff could take action to oppose the allegations of the "violation" by Puckett, was arbitrary, capricious, oppressive, malicious, vexatious, and deliberately deprived Plaintiff of his rights to due process, and also the equal protection of the laws.

ECF No. 12, pg. 18.

///

Defendants argue that Plaintiff's federal Count III fails to state claims for violation of his procedural or substantive due process rights. See ECF No. 14-1, pgs. 6-7. Defendants also contend that federal Count III fails to state an equal protection claim. See id. at 7-8.

    a.  Procedural Due Process

As Defendants note in their motion, a procedural due process claim involves the following elements: (1) existence of a protected liberty or property interest; and (2) denial of adequate procedural protection. See Pinnacle Armor, Inc. v. United States, 638 F.3d 708, 716 (9th Cir. 2011). The fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 42 U.S. 319, 333 (1976). According to Defendants, Plaintiff's federal Count III is deficient with respect to procedural due process because "[m]erely stating that a due process violation occurred is conclusory and does not suffice to state a valid claim." ECF No. 14-1, pg. 7.

The Court does not agree. Plaintiff's first amended complaint goes well beyond merely stating that a procedural due process violation occurred. Rather, Plaintiff's claim is specific in that he alleges that his property was seized as some sort of official sanction against him, but that he was not provided with notice or an opportunity to be heard. The Court finds that Plaintiff has plausibly stated a claim for violation of his procedural due process rights as to seizure of his property from the Henley-Hornbrook Road address. Defendants' motion to dismiss should be denied as to the procedural due process component of Plaintiff's federal Count III.

    b.  Substantive Due Process

Defendants state that substantive due process is only violated by an abuse of power which shocks the conscience. See ECF No. 14-1, pg. 7 (citing Costanich v. Dep't of Soc. And Health Servs., 627 F.3d 1101, 1111 (9th Cir. 2010)). According to Defendants:

> In this case, similar to Plaintiff's failure to allege procedural due process, Plaintiff has also failed to allege facts in support of egregious official conduct that constituted an abuse of power. Plaintiff admits Defendants relied upon law enforcement and omits the legal basis provided to him. As such, Plaintiff's substantive due process claim likewise is subject to dismissal.

ECF No. 14-1, pg. 7.

13

As with Plaintiff's procedural due process claim, the Court finds that Plaintiff's substantive due process claim plausibly alleges, based on the totality of the allegations in the first amended complaint, action by HCSD and the individual defendants, who are members of HCSD's board, that would amount to an abuse of power which shocks the conscience. If true, Plaintiff's claim that Defendants fabricated a "water emergency" to inappropriately obtain grant funds for their own use and then targeted Plaintiff for raising the alarm would amount to a shocking abuse of government power lacking any reasonable justification. See Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008). Defendants' motion to dismiss should be denied as to the substantive due process component of Plaintiff's federal Count III.

          c.          Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of individuals which included plaintiff, and that such conduct did not relate to a legitimate government purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985). There is, however, no equal protection scrutiny under a "class of one" theory absent a pattern of generally exercising government authority in a particular manner while treating one individual

differently and detrimentally.  See Tower v. Brewer, 672 F.3d 650, 660-61 (9th Cir. 2012) (per curiam).

        According to Defendants:

> In this case, Plaintiff alleges he was a "class of one." FAC at 6, lines 4–8. But he alleges no facts he had been treated differently from others similarly situated. He alleges a water emergency that would have affected many others within the county but states nothing of anyone else. Further, he admits he did not reside at the subject residence (FAC at 3 n.5), but he does not allege facts as to the vehicles belonging to the owner of the subject residence or other individuals on the premises at the time of the incident. He fails to disclose whether their vehicles had been seized. However, the docket now shows two August 2023 entries revealing there are two other cases arising out of the same incident. See ECF Nos. 6, 7. Both cases involve different plaintiffs from Mr. Harrell, and they likewise allege vehicles had been unlawfully towed. Plaintiff therefore does not qualify as a party of one, and his claim under equal protection now fails. Accordingly, the Court should dismiss "Count III" — deprivation of due process and equal protection.

ECF No. 14-1, pg. 8.

        Defendants reference other individuals who allege in separate actions that they were also mistreated in the way Plaintiff here contends.  Defendants are presumably referring to the Olson and Gifford actions described above.  In both actions, Ms. Olson and Mr. Gifford raise similar claims of wrongdoing by the HCSD and its board members with respect to "water emergencies," improperly charged violations of various HCSD resolutions, and seizure of vehicles and other property from the Henley-Hornbrook Road address in July 2021.  According to Defendants, Plaintiff cannot proceed as a class of one because, in essence, he is a member of a class of three.  Defendants cite no authority in support of such a narrow reading of the case law relating to the "class of one" theory for equal protection claims.  Defendants' motion to dismiss should be denied as to the equal protection component of Plaintiff's federal Count III.

        4.    <u>Count IV</u>

        In Count IV, Plaintiff alleges retaliation.  See ECF No. 12, pgs. 18-19.  Plaintiff's specific allegations are as follows:

> 47.    Plaintiff's complaint about the HCSD (both administrative, and via legal actions to the courts), assistance to others making complaints; testimony to the HCSD, courts, and State and Federal enforcement agencies about violations of law, violations of Plaintiff's statutory and Constitutional rights, and the wrongful denial and

15

> suppression of Plaintiff's rights granted under the HCSD Rules and Regulations, and Bylaws by the HCSD, Puckett, Hanson, Tulledo, and Dingman, entitle him to protection from retaliation by way of wrongful and/or discriminatory adverse action by the HCSD, Puckett, Hanson, Tulledo, and Dingman, as well as those persons acting in agreement and/or joint action with them as government agents.
> 48.   The HCSD, by and with Puckett, Hanson, Tulledo, and Dingman, individually and while acting through any government entity/officer/employees, undertook the wrongful acts herein in part to retaliate against Plaintiff for his exercise of First Amendment rights to speak freely, and to petition for redress of grievances to government agencies, and to the Courts.

ECF No. 12, pgs. 18-19.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the plaintiff must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The plaintiff must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the plaintiff must establish the following in order to state a claim for retaliation: (1) officials took adverse action against the plaintiff; (2) the adverse action was taken because the plaintiff engaged in protected conduct; and (3) the adverse action chilled the plaintiff's First Amendment rights. See Rhodes, 408 F.3d at 568.

Defendants argue:

> In this case, Plaintiff has not established any of the foregoing elements. Instead, he relies upon a "shotgun pleading," and he does not allege any facts in support of his retaliation claim. Without additional factual specificity, a retaliation is not cognizable. *See Iqbal*, 556 U.S. at 678 (a claim has the requisite facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged).

ECF No. 14-1, pg. 8.

///

///

The Court does not agree and finds that Plaintiff's first amended complaint plausibly pleads all the required elements of a retaliation claim. Specifically, Plaintiff claims that he engaged in protected activity (filing grievances, lawsuits, administrative complaints, etc.), that Defendants were aware of such activity, and that Defendants took adverse action against him (seizing his vehicle) because of his protected activity. It is also reasonable to infer from the totality of Plaintiff's allegations that Defendants' conduct was intended to discourage Plaintiff from engaging in further protected activity with respect to his claims regarding the operation of HCSD. Defendants' motion to dismiss should be denied as to federal Count IV.

### 5. Count V

In Count V, Plaintiff alleges violations of 42 U.S.C. § 1985(2) and (3) as follows:

> 49. Plaintiff alleges on information and belief that the vindictive, retaliatory, and oppressive plan created and agreed to by the HCSD, Puckett, Hanson, Tulledo, and Dingman to subject Plaintiff to deprivation of his Fourth and Fourteenth Amendment rights; and, the acts of using their official powers and positions ("force" and/or "intimidation") in furtherance thereof by trespassing upon, and seizing, Plaintiff's property, was calculated to prevent and/or intimidate Plaintiff from initiating any further, and/or continuing then-pending, or contemplated administrative complaints and/or legal actions in federal and state courts, as well as to retaliate against him for his past such protected actions – thereby violating the provisions of, and protections afforded Plaintiff by, 42 U.S.C. 1985(2) and/or (3) as a "class of one."

ECF No. 12, pg. 19.

In a footnote, Plaintiff adds: "Other citizens and electors from Hornbrook who complained to the HCSD, the SWRCB, and/or other governmental agencies about the HCSD's operations and conduct were not subject to any retaliatory or adverse acts." See id. at n.39.

Under 42 U.S.C. § 1985(2), liability exists "[i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or

having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." 42 U.S.C. § 1985(2).  A conspiracy claim under § 1985(2) requires a direct or indirect purpose to deprive any persons of the equal protection of the laws, or the equal privileges or immunities under the laws, and a class race-based animus. See Kush v. Rutledge, 460 U.S. 719 (1983); Griffin v. Breckenridge, 403 U.S. 88 (1971); Bretz v. Kelman, 773 F.2d 1026, 1028 (9th Cir. 1985) (en banc).

Under § 1985(3), liability exists "[i]f f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3).  A racial, or other class-based, invidiously discriminatory animus is an indispensable element of the claim.  See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267–69 (1993).  The Ninth Circuit has extended § 1985(3) "beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

Defendants argue that the first amended complaint fails to state claims under either § 1985(2) or § 1985(3).  See ECF No. 14-1, pg. 9.  Specifically, Defendants argue that Plaintiff's allegations do not satisfy the heightened pleading standard applicable to conspiracy claims and that, as to the § 1985(3) claim, Plaintiff has not alleged racial discriminatory animus.  See id.

To be cognizable, both of Plaintiff's § 1985 claims require allegations of race-based discrimination.  Plaintiff very clearly alleges in the first amended complaint that he is a "class of one," and not a member of a recognized protected racial class.  For this reason alone, Plaintiff's § 1985 claims as alleged in federal Count V should be dismissed with prejudice.

///

     6.  Count VI

In Count VI, Plaintiff alleges Defendants violated 42 US.C. § 1986 by "failing and/or refusing to use their governmental authority and powers to take any action to stop, or prevent, the violation of Plaintiff's Constitutional rights" as outlined in Count V.  ECF No. 12, pgs. 19-20, ¶ 50.  Defendants argue that Plaintiff cannot prevail under § 1986 because he fails to state any cognizable claim under § 1985.  See ECF No. 14-1, pgs. 9-10.  The Court agrees.  See Karim-Panahi, 839 F.2d at 626.  Federal Count VI should also be dismissed with prejudice.

  **B.**  **State Law Claims**

As to Plaintiff's state law claims, Defendants argue:

> Given that Plaintiff has failed to state a federal law claim, Defendants request the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state causes of action pursuant to 28 U.S.C. § 1367(c)(3) (a district court may "decline to exercise supplemental jurisdiction" over state law causes of action if it "has dismissed all claims over which it has original jurisdiction"); *see also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

ECF No. 14-1, pg. 11.

For the reasons discussed above, the Court finds that Plaintiff has stated plausible federal claims.  Defendants' argument concerning state law claim is, therefore, unpersuasive.  As Defendants have not offered any substantive challenge to the specific state law claims asserted in the first amended complaint, there is nothing further before the Court as to such claims. Defendants' motion to dismiss should be denied as to Plaintiff's state law claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendants' motion to dismiss, ECF No. 14, be granted in part and denied in part as set forth below:

   a. Defendants' motion be granted with leave to amend as to the trespass component of federal Count I.

   b. Defendants' motion be denied as to the search-and-seizure component of federal Count I.

   c. Defendants' motion be denied as to federal Count II.

   d. Defendants' motion be denied as to federal Count III.

   e. Defendants' motion be denied as to federal Count IV.

   f. Defendants' motion be granted as to federal Counts V and VI, which should be dismissed with prejudice.

   g. Defendants' motion be denied as to all state law claims.

2. Plaintiff be provided an opportunity to file a second amended complaint or proceed on the first amended complaint as to those claims identified herein as cognizable.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 26, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

20